## MARIA F. MCKEON *v.* WILLIAM P. LENNON
### (AC 30067)
### (AC 30068)
### (AC 30069)
### (AC 30070)
### (AC 30636)

Lavine, Robinson and Lavery, Js.

586

Argued November 18, 2010—officially released September 27, 2011

*Campbell D. Barrett*, with whom were *Jon T. Kukucka* and, on the brief, *C. Michael Budlong*, for the appellant (plaintiff).

*Proloy K. Das*, with whom were *Debra C. Ruel* and, on the brief, *Dara P. Goings* and *James M. Ruel*, for the appellee (defendant).

*Opinion*

LAVERY, J. In these consolidated appeals, the plaintiff, Maria F. McKeon, appeals from several judgments of the trial court issued in connection with the judgment dissolving her marriage to the defendant, William P. Lennon. On appeal, the plaintiff claims that the court improperly (1) denied her motion to open the dissolution judgment (AC 30067); (2) denied her motions for modification of child support (AC 30068); (3) awarded attorney's fees to the defendant incurred in defending against her motions for modification (AC 30069); (4)

clarified certain orders concerning the parties' beach home and certain accounts during a contempt hearing (AC 30070); and (5) awarded attorney's fees to the defendant incurred in defending against a motion for contempt (AC 30636 and AC 30636, as amended). We dismiss the appeal in AC 30067, reverse the judgments of the trial court in AC 30068 and AC 30069, affirm the judgment of the trial court in AC 30070, dismiss the appeal in AC 30636 and reverse the judgment of the trial court in AC 30636, as amended.

The record discloses the following relevant facts and procedural history. The parties were married on August 29, 1981. During the course of their marriage, the parties had three children, none of whom had reached the age of majority by August 3, 2005, when the plaintiff initiated the action to dissolve the parties' marriage. Following a ten day trial, the court rendered judgment dissolving the parties' marriage on December 31, 2007. The court issued a wide range of orders in connection with the dissolution judgment, including, among other things, orders regarding the custody and care of the parties' minor children, the children's medical care and finances, the distribution of the parties' real and personal property, and the payment of child support and alimony as well as the parties' tax liabilities.

On January 18, 2008, the plaintiff filed a motion for reconsideration and reargument of several of the foregoing orders, which the court denied on March 27, 2008. Neither party appealed from that ruling. On April 28, 2008, the plaintiff filed a motion to open the dissolution judgment, which the court granted in part and denied in part on June 10, 2008. On June 26, 2008, the plaintiff filed her first appeal, AC 30067, to challenge the validity of the court's judgment concerning her motion to open.

On May 8, 2008, the plaintiff filed a motion for modification of the child support orders issued in connection

with the dissolution judgment. The defendant filed an objection on May 23, 2008, in which he asserted a claim for attorney's fees incurred in defending against the plaintiff's motion for modification. On May 27, 2008, the plaintiff filed an amended motion for modification. The defendant responded by filing a second objection on May 30, 2008, in which he again asserted a claim for attorney's fees incurred in defending against the plaintiff's motions for modification. On June 10, 2008, the court issued a memorandum of decision denying the plaintiff's motions and granting the defendant's request for attorney's fees. The plaintiff filed her second appeal, AC 30068, on June 26, 2008, challenging the court's judgment denying her motions for modification. Shortly thereafter, on July 2, 2008, the court issued a memorandum of decision ordering the plaintiff to pay the defendant attorney's fees in the amount of $6497.60. The plaintiff then filed her third appeal, AC 30069, on July 21, 2008, challenging the award of attorney's fees.

On June 17, 2008, the defendant filed a motion for contempt, alleging that the plaintiff had failed to convey to him her interest in certain real property, located at 8 Crooked Road in Stonington (beach house), as required under the terms of the dissolution judgment. The next day, the defendant filed an amended motion for contempt, alleging that the plaintiff also had failed to divide certain accounts, established pursuant to the Connecticut Uniform Transfers to Minors Act (CUTMA), General Statutes §§ 45a-557 through 45a-560b, as required under the dissolution judgment. The plaintiff filed an objection to the defendant's motions for contempt on June 19, 2008, claiming that the court had provided her with an ownership interest in the parties' beach house and that the court had abused its discretion in allowing the parties to use the CUTMA accounts to fund the children's education. On July 8, 2008, the court conducted a hearing on the plaintiff's motion for contempt. During the

hearing, the court stated that it never had intended to provide the plaintiff with a property interest in the parties' beach house and declined to open or reconsider its orders concerning the children's CUTMA accounts. On July 28, 2008, the plaintiff filed her fourth appeal, AC 30070, challenging the court's decision regarding the beach house and the children's CUTMA accounts.

On July 8, 2008, the plaintiff filed a separate motion for contempt alleging that the defendant had failed to comply with certain provisions of the dissolution judgment. The defendant filed an objection on July 15, 2008, denying the material allegations of that motion and requesting an award of attorney's fees. After hearing two days of argument and testimony from both parties, the court, on October 27, 2008, issued a memorandum of decision denying the plaintiff's motion for contempt and requesting that the defendant's attorney submit an affidavit of attorney's fees incurred in responding to that motion. On December 23, 2008, the plaintiff filed her fifth appeal, AC 30636, challenging the court's decision to award attorney's fees to the defendant. Thereafter, on August 4, 2009, the defendant filed an affidavit of attorney's fees. Following a hearing, the court granted the defendant's request for attorney's fees in the amount of $6127.50. The plaintiff then filed an amended appeal with this court in AC 30636 on September 15, 2009, again challenging the trial court's award of attorney's fees to the defendant. On February 20, 2009, the plaintiff filed a motion to consolidate her appeals, which this court granted on March 11, 2009. Additional facts and procedural history will be set forth as necessary.

I

AC 30067

In her first appeal, AC 30067, the plaintiff challenges the trial court's ruling denying her motion to open the dissolution judgment. The plaintiff claims that the court

improperly denied her motion to open without first conducting an evidentiary hearing regarding her claim against the defendant for fraudulent nondisclosure of assets. The defendant responds that this court lacks subject matter jurisdiction over this appeal because it was not taken from a final judgment. We agree with the defendant.

The following additional facts and procedural history are relevant to the plaintiff's appeal. On January 18, 2008, the plaintiff filed a motion for reconsideration and reargument of the financial and support orders issued in connection with the dissolution judgment. In that motion, the plaintiff challenged (1) the division of the parties' pension accounts; (2) the division of the defendant's 401 (k) retirement plan; (3) the assignment of responsibility for the children's medical expenses; (4) the requirement that the plaintiff maintain life insurance coverage; (5) the award of child support; (6) the valuation of the parties' personal property; (7) the assignment of the parties' tax liabilities; (8) the distribution of the parties' real property; and (9) the failure to rule on a pendente lite motion for support that the plaintiff previously had filed with the court. The court denied the plaintiff's motion for reconsideration on March 27, 2008.

On April 28, 2008, the plaintiff filed a motion to open the dissolution judgment, claiming that (1) the judgment improperly required her to cover certain expenses incurred due to her adult daughter's operation of a motor vehicle; (3) the defendant fraudulently had failed to disclose certain assets that he had inherited from his brother; (4) the judgment improperly failed to award the defendant's preretirement survivor annuity to the plaintiff; (5) the judgment improperly failed to award cost of living adjustments and other increases to the plaintiff with respect to the portion of the defendant's preretirement benefits that she had been awarded; (6) the judgment improperly failed to assign responsibility

for gains and losses on the parties' pension accounts; (7) the distribution of the parties' real property left the plaintiff "financially pinned"; (8) the order awarding the plaintiff two weeks at the parties' beach house was not in the best interest of the children; and (9) the judgment must be modified to require the parties to report amounts paid to their child care assistant on their individual tax returns in compliance with Internal Revenue Service regulations.[1]

On June 10, 2008, the court issued a memorandum of decision in connection with the plaintiff's motion to open. The court granted the plaintiff's request to open the judgment with respect to her first claim, vacating the order requiring that the parties maintain a vehicle for their adult daughter. The court then denied the plaintiff's request with respect to the third, seventh and eighth claims of her motion but determined that an evidentiary hearing was required in order to resolve the fourth, fifth, sixth and ninth claims of that motion. Accordingly, the court ordered the parties to secure a trial date and reserved judgment with respect to those four unresolved claims pending the outcome of the evidentiary hearing.

On June 26, 2008, the plaintiff filed this appeal, AC 30067, from the court's June 10, 2008 decision. Thereafter, on March 12, 2009, the plaintiff filed a motion for articulation in which she requested, among other things, that the court articulate the basis for its partial denial of the motion to open as well as its conclusion that the plaintiff knew of, or could easily have discovered, the defendant's inheritance. The court denied the plaintiff's motion for articulation on April 8, 2009, and the plaintiff timely filed a motion for review. On July 15, 2009, this

---

[1] The plaintiff raised a total of eight claims in her motion to open the dissolution judgment. Due to an apparent typographical error, these claims are numbered one and three through nine. In an effort to avoid confusion, we will refer to these claims as they are labeled in the plaintiff's motion.

court granted the plaintiff's motion for review and the relief requested therein. In its August 10, 2009 articulation, the trial court stated that it had reserved judgment with respect to the four unresolved claims pending the outcome of the evidentiary hearing contemplated in its June 10, 2008 memorandum of decision. The court also stated that, on the basis of its review of the record and the docket, "no such hearing has been scheduled by the parties . . . and thus no final decision on the four [unresolved claims] has been rendered."

Before addressing the merits of the plaintiff's claim on appeal, we must first consider the defendant's claim that this court lacks subject matter jurisdiction. "It is axiomatic that the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § 61-1 . . . . Thus, as a general matter, an interlocutory ruling may not be appealed pending the final disposition of a case. . . . Our Supreme Court has, however, determined that certain interlocutory orders may be treated as final judgments for purposes of appeal. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; internal quotation marks omitted.) *Parrotta* v. *Parrotta*, 119 Conn. App. 472, 475–76, 988 A.2d 383 (2010).

The defendant argues that this court lacks subject matter jurisdiction over the appeal in AC 30067 because the trial court's ruling rejecting the plaintiff's claim of fraudulent nondisclosure is not an appealable final judgment. In response, the plaintiff argues that the court's ruling terminated a separate and distinct proceeding, satisfying the first prong of the *Curcio* test. Our Supreme Court has defined the type of order that would

terminate a separate and distinct proceeding and thus give rise to an immediate right to appeal. "The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." (Internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009).

In the present case, the trial court's ruling rejecting the plaintiff's claim of fraudulent nondisclosure did not terminate a separate and distinct proceeding. On the contrary, that ruling disposed of a single claim raised in the plaintiff's motion to open, and was "merely a step along the road to final judgment . . . ." (Internal quotation marks omitted.) Id. The plaintiff argues that her decision to raise eight claims in one motion to open, instead of individually raising each claim in an independent motion to open, should not deprive this court of subject matter jurisdiction. It is well established, however, that "[t]he policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 624, 985 A.2d 349 (2009), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010). Were we to accept the plaintiff's argument, which we do not, we would open the floodgates to piecemeal appeals from interlocutory

orders. To do so would, in effect, ignore the policy concerns underlying the final judgment rule.

In light of the foregoing analysis, we conclude that the trial court's ruling rejecting the plaintiff's claim of fraudulent nondisclosure did not terminate a separate and distinct proceeding. As a consequence, we do not have subject matter jurisdiction to hear the plaintiff's appeal under the first prong of the *Curcio* test. Accordingly, we dismiss the plaintiff's appeal in AC 30067.

## II

## AC 30068

In her second appeal, AC 30068, the plaintiff challenges the trial court's ruling denying her motions for modification of child support. The plaintiff claims that the court improperly denied her motions for modification without first conducting an evidentiary hearing with respect to her claim that there had been a substantial change in the parties' financial circumstances since the date of the dissolution judgment.[2] The defendant responds that an evidentiary hearing was not required because the allegations set forth in the plaintiff's motions were insufficient to support her claim. We agree with the plaintiff.

The following additional facts and procedural history are relevant to the plaintiff's appeal. In its memorandum of decision dissolving the parties' marriage, the trial court ordered the defendant to pay to the plaintiff $439 per week in child support plus 50 percent of the children's unreimbursed medical expenses and private

---

[2] The plaintiff also claimed that the child support award deviated from the child support guidelines established pursuant to General Statutes § 46b-215a. The plaintiff does not address this claim in her brief, and, therefore, it is deemed abandoned. See *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 636 n.5, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

school tuition.[3] In addition, the court ordered both parties to maintain life insurance policies. Specifically, the court ordered the plaintiff to maintain a $500,000 life insurance policy for the benefit of the children, naming the defendant as trustee, and ordered the defendant to maintain a $2 million life insurance policy "naming the [plaintiff] and children as irrevocable beneficiaries as their interests may appear."

On May 8, 2008, pursuant to General Statutes § 46b-86,[4] the plaintiff filed a motion for modification of child support, which was amended on May 27, 2008. In her amended motion, the plaintiff claimed that there had been a substantial change in the parties' financial circumstances since the date of the dissolution judgment. In support of her claim, the plaintiff alleged that the cost of gasoline, home heating oil, her mortgage and the children's private school tuition had increased, and that the value of her home had decreased. She also alleged that the defendant's bonus income, as well as his income from certain stock options and restricted stock, had increased substantially. The defendant filed an objection to the plaintiff's original motion for modification on May 23, 2008, and an objection to the plaintiff's amended motion for modification on June 2, 2008. In both of his objections, the defendant denied the foregoing allegations and claimed that the plaintiff had failed

[3] The trial court also ordered each party to pay for one half of all costs associated with (1) work-related after school day care; (2) transportation to and from school; (3) extracurricular activities in excess of $150; and (4) the continued employment of the parties' child care assistant.

[4] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

to set forth a valid claim under § 46b-86. On June 10, 2008, the trial court issued its memorandum of decision denying the plaintiff's motions for modification without conducting an evidentiary hearing. This appeal followed.

We initially set forth the well established standard of review and principles of law relevant to the plaintiff's appeal. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 146, 165–66, 2 A.3d 38 (2010).

"[Section] 46b-86 governs the modification of a child support order after the date of a dissolution judgment. . . . Section 46b-86 (a) permits the court to modify child support orders in two alternative circumstances. Pursuant to this statute, a court may not modify a child support order unless there is first either (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines . . . . Both the substantial change of circumstances and the substantial deviation from child support guidelines' provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such

changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole . . . .

"As to the substantial change of circumstances provision of § 46b-86 (a), [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification. . . . A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, [t]he court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited to a comparison between the current conditions and the last court order. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Citations omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 491–93, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

In the present case, the trial court did not conduct an evidentiary hearing with respect to the plaintiff's claim that there had been a substantial change in the parties' financial circumstances. Rather, the court characterized the plaintiff's motions as "list[s] of requests

for the court to change its mind regarding issues which it has carefully considered and reconsidered," and cited its previous decision denying the plaintiff's motion for reconsideration as support. In doing so, the court "fail[ed] to recognize that there is a fundamental distinction between a motion for modification of child support . . . and a motion for reconsideration, namely, that a party's changed financial circumstances are relevant to the former but not the latter. That is because a motion for reconsideration is merely a request that the court reconsider its original ruling on the basis of the evidence that was before it when that ruling was made." *Weinstein* v. *Weinstein*, 275 Conn. 671, 737, 882 A.2d 53 (2005) (*Zarella, J.*, dissenting). A motion for modification, on the other hand, requires "the moving party [to] demonstrate that circumstances have changed *since the last court order* such that it would be unjust or inequitable to hold either party to it." (Emphasis added; internal quotation marks omitted.) *Rosier* v. *Rosier*, 103 Conn. App. 338, 344, 928 A.2d 1228, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007). Thus, the trial court's ruling denying the plaintiff's motion for reconsideration was irrelevant to its consideration of the plaintiff's motions for modification.

We conclude that the court abused its discretion in denying the plaintiff's motions for modification without first conducting an evidentiary hearing. The trial court was faced with several disputed issues of fact concerning changes in the parties' financial circumstances after the date of the dissolution judgment. "As we have often stated, [g]enerally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Temlock* v. *Temlock*, 95 Conn. App. 505, 517, 898 A.2d 209, cert. denied, 279 Conn.

910, 902 A.2d 1070 (2006). Accordingly, we reverse the judgment of the trial court in AC 30068.

## III

## AC 30069

In her third appeal, AC 30069, the plaintiff challenges the trial court's award of attorney's fees to the defendant in connection with the plaintiff's motions for modification of child support. The plaintiff claims that the award is premised on a finding that she had acted in bad faith in filing her motions for modification and that the award is invalid, as the court's finding of bad faith is clearly erroneous. The defendant responds that the court issued the award pursuant to its discretionary authority under General Statutes § 46b-62,[5] and that the award is a valid exercise of the court's discretion. We agree with the plaintiff.

The following additional facts and procedural history are relevant to the plaintiff's appeal. As mentioned previously in this opinion, the plaintiff filed a motion for modification of child support on May 8, 2008. The defendant responded by filing an objection to the plaintiff's motion on May 23, 2008, in which he requested that the plaintiff pay the attorney's fees and costs that he would incur in defending against the plaintiff's motion. Thereafter, on May 27, 2008, the plaintiff filed an amended motion for modification in which she objected to the defendant's claim for attorney's fees.[6] The defendant

---

[5] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[6] The plaintiff also asserted a claim for attorney's fees against the defendant. The plaintiff does not address this claim in her brief, and, therefore, it is deemed abandoned. See *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 636 n.5, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

then filed an objection to the plaintiff's amended motion for modification on May 30, 2008, in which he again requested that the plaintiff pay the attorney's fees and costs that he would incur in defending against the plaintiff's motions for modification pursuant to our Supreme Court's decision in *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007) (en banc).

On June 10, 2008, the trial court issued a memorandum of decision granting the defendant's request for attorney's fees. The court found, without conducting an evidentiary hearing, "that the motions to modify were filed without a good faith basis and that the assessment of attorney's fees is warranted." The court then ordered the defendant to file an affidavit detailing the fees expended in defending against the plaintiff's motions for modification. The defendant filed an affidavit of attorney's fees June 18, 2008, and the plaintiff filed an objection to the amount requested therein on June 27, 2008. The plaintiff then filed a revised affidavit of attorney's fees on June 30, 2008, and, on July 2, 2008, the court issued a memorandum of decision ordering the plaintiff to pay the defendant attorney's fees in the amount of $6497.60. This appeal followed.

Before addressing the merits of the plaintiff's claim, we must discern the legal principles and standard of review that govern our analysis. The parties disagree as to the basis of the trial court's decision awarding attorney's fees to the defendant. The plaintiff argues that the court issued its decision in accordance with our Supreme Court's decision in *Maris* v. *McGrath*, 269 Conn. 834, 850 A.2d 133 (2004). Accordingly, she argues that the trial court's decision is premised on a finding of bad faith and that the court's finding is subject to the clearly erroneous standard of review. The defendant responds that the court issued its decision in accordance with our Supreme Court's decision in *Ramin* v. *Ramin*, supra, 281 Conn. 324. Accordingly, he argues

that the trial court issued its decision pursuant to its discretionary authority under § 46b-62 and that the court's decision therefore is subject to the abuse of discretion standard of review.

In the present case, the court specifically granted the defendant's motion for attorney's fees based on its finding that the plaintiff had filed her motions for modification without a "good faith basis . . . ." Accordingly, we conclude that the court's decision is premised on a finding of bad faith and that the award was issued in accordance with our Supreme Court's decision in *Maris* v. *McGrath*, supra, 269 Conn. 834. Having determined the basis of the trial court's decision, we now set forth the applicable standard of review. "Whether a party has acted in bad faith is a question of fact, subject to the clearly erroneous standard of review." *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 837, 3 A.3d 992 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Waterview Site Services, Inc.* v. *Pay Day, Inc.*, 125 Conn. App. 561, 566–67, 11 A.3d 692 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011).

We next turn to our Supreme Court's decision in *Maris* v. *McGrath*, supra, 269 Conn. 834. In *Maris*, the court reaffirmed that "[s]ubject to certain limitations, a trial court in this state has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated. . . .

"As a procedural matter, before imposing any such sanctions, the court must afford the sanctioned party

or attorney a proper hearing on the . . . motion for sanctions. . . . There must be fair notice and an opportunity for a hearing on the record. . . . This limitation, like the substantive limitations stated in the following discussion, is particularly appropriate with respect to a claim of bad faith or frivolous pleading by an attorney, which implicates his professional reputation. . . .

"As a substantive matter, [t]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. . . . That rule does not apply, however, where the opposing party has acted in bad faith. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. . . . It applies both to the party and his counsel. . . . Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." (Citations omitted; internal quotation marks omitted.) Id., 844–45.

Applying these principles to the case at hand, we conclude that the trial court was not justified in awarding attorney's fees to the defendant. It is undisputed that the court did not afford the plaintiff an opportunity for a hearing on the record concerning the issue of bad faith. Moreover, our review of the record reveals that the court's finding of bad faith is premised solely on its characterization of the plaintiff's motions for modification as "list[s] of requests for the court to change its mind regarding issues which it ha[d] carefully considered and reconsidered." As mentioned in part II of this opinion, however, the plaintiff's motions for modification were, in fact, premised on several disputed issues

of fact that the court had not considered previously. Because the court failed to conduct a hearing on those issues, it is impossible to determine whether the plaintiff had a good faith basis for seeking modification of the orders of child support. Thus, it is impossible on the basis of the record before us to determine whether the plaintiff had filed her motions for modification in bad faith. We therefore conclude that the court's finding of bad faith is clearly erroneous. Accordingly, we reverse the judgment awarding attorney's fees to the defendant in AC 30069.

## IV

## AC 30070

In her fourth appeal, AC 30070, the plaintiff challenges the trial court's clarification of two orders issued in connection with the dissolution judgment. The plaintiff claims that the court (1) improperly modified its order concerning ownership of the parties' beach house and (2) abused its discretion in allowing the parties to use certain CUTMA accounts to provide for the children's education. We affirm the judgment of the trial court.

The following additional facts and procedural history are relevant to the plaintiff's appeal. The dissolution decree contains several orders concerning the parties' beach house. In dividing the parties' real property, the court ordered the plaintiff to convey her interest in the beach house to the defendant by way of a quitclaim deed.[7] The court then ordered the defendant to make the beach house available to the plaintiff for two weeks each summer so that the plaintiff could spend time with the children at the beach house during the children's summer vacation. The court specified, however, that

---

[7] The court stated: "The parties are joint owners of real property located at 8 Crooked Road, Stonington, Connecticut. The [plaintiff] shall quitclaim all of her right, title and interest in and to the property to the [defendant]."

the foregoing arrangement would expire at the end of the summer of 2014 or as soon as one of the parties' minor children chooses not to spend his summer vacation at the beach house.[8]

The dissolution judgment also incorporates the terms of an agreement between the parties concerning certain trust accounts. The relevant portion of the dissolution judgment provides: "The [parties] shall equally divide and take possession of each child's education accounts . . . and each shall have discretion to apply the funds from his or her accounts to his or her share of the children's educational expenses." These "education accounts" included certain accounts established pursuant to CUTMA.[9]

On June 17, 2008, the defendant filed a motion for contempt, alleging that the plaintiff had failed to convey her interest in the beach house to him. The next day, the defendant filed an amended motion for contempt, alleging that the plaintiff also had failed to divide the children's CUTMA accounts. The plaintiff filed an objection to the defendant's motions for contempt on June 19, 2008. In that motion, the plaintiff alleged that the court, in granting her use of the beach house, intended to provide her with an ownership interest in the property. The plaintiff also alleged that the court abused its discretion in allowing the parties to use the funds in the CUTMA accounts to provide for the children's education.

---

[8] The court stated: "The [defendant] is awarded possession and ownership of the [beach] home by the court. [The defendant] shall make the [beach] home available to [the plaintiff], for the express purpose of summer vacation time with the children, for two (2) weeks, to be taken during the last week in July and/or any week in August. She shall select her two weeks in writing by June 1 of each year. . . .

"This arrangement shall terminate at the end of the summer season in 2014, or if [one of the minor children] no longer uses the cottage with [the plaintiff], (e.g. he is working or at camp away from the [beach home])."

[9] The order also referenced a variety of individual retirement accounts. These accounts are not at issue in this appeal.

Following a hearing, the court denied both of the defendant's motions for contempt. In doing so, however, the court clarified its orders concerning the beach house and the CUTMA accounts. With respect to the order concerning the beach house, the court explicitly stated that it intended to provide the defendant with title to the property in fee simple absolute and did not intend to provide the plaintiff with any interest therein.[10] With respect to the order concerning the CUTMA accounts, the court declined to alter its original order allowing the parties to use the funds therein to provide for the children's education. This appeal followed.

## A

The plaintiff claims that the trial court impermissibly modified its original property award after the date of the dissolution judgment. Specifically, she argues that the court implicitly awarded her an ownership interest in the beach house at the time of the dissolution judgment and impermissibly modified that award in rendering judgment denying the defendant's motions for contempt. The defendant responds that the plaintiff lacks standing to assert this claim because she is not aggrieved by the court's judgment denying his motions

---

[10] During the July 8, 2008 hearing on the defendant's motions for contempt, the court stated: "[I]t was the court's intention to give the [beach house] to the defendant . . . in fee simple absolute and . . . he could have sold the [beach house] the very next day, if he so wished without being in violation of the court order, and had it burned to the ground the very next day, the [plaintiff's] use would have been extinguished just the same. . . .

"It was not the court's intention to grant a property interest in the [beach] home which would be a cloud on the title, specifically, the language was that . . . the [plaintiff] shall quitclaim all of her right, title and interest in and to the [beach house] . . . .

"The summer use was simply that, a use of a place that was obviously cherished by both parties. . . . It was not the court's intention to create a property interest, and, for that reason, the plaintiff is ordered forthwith to execute a quitclaim deed to the [defendant] of the [beach house] granting to him all right, title and interest absolutely and forever without reservation."

for contempt. We conclude that the plaintiff's argument is without merit.

We first address the defendant's argument that the plaintiff is not aggrieved by the judgment and therefore has no standing to appeal. "Aggrievement, in essence, is appellate standing. . . . In the appellate context, [a]ggrievement is established *if there is a possibility*, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Emphasis added; internal quotation marks omitted.) *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 465 n.1, 10 A.3d 52 (2010). Although judgment was rendered in her favor, we conclude that the plaintiff is aggrieved because there is a possibility that the trial court's judgment denying the defendant's motions for contempt adversely affected her alleged interest in the beach house.

We next address the issue of whether the court impermissibly modified its award of the beach house in rendering its judgment denying the defendant's motions for contempt. The plaintiff's argument is premised on two assertions. First, the plaintiff asserts that the court awarded her an ownership interest in the beach house at the time of the dissolution judgment. Second, the plaintiff asserts that the court deprived her of that interest during the hearing on the defendant's motions for contempt. The plaintiff's argument ignores the plain language of the dissolution decree, which provides: "[T]he [plaintiff] shall quitclaim *all* of her right, title and interest in and to the [beach house] to the [defendant]." (Emphasis added.) In light of the foregoing, we conclude that the court did not award the plaintiff an ownership interest in the beach house at the time of the dissolution judgment. Because logically it is impossible for the court to have deprived the plaintiff of a property interest that did not exist, we conclude that the plaintiff's argument is without merit. We therefore conclude

that the court did not modify impermissibly its original award after the date of the dissolution judgment and affirm the court's judgment in AC 30070 insofar as it concerns the beach house. Moreover, we conclude that all other arguments with respect to the beach house are without merit.

B

The plaintiff also claims that the trial court abused its discretion in allowing the parties to use the CUTMA accounts to provide for the children's education. Specifically, she argues that the parties are not permitted to use these custodial accounts to discharge their child support obligations. The defendant responds that the court properly declined to open or modify the child support orders during the hearing on the defendant's motion for contempt. We agree with the defendant.

We agree with the plaintiff that "[a] parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 119 Conn. App. 194, 201, 986 A.2d 1119, cert. granted on other grounds, 295 Conn. 916, 990 A.2d 868 (2010). It is well established, however, that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . and . . . there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid." (Internal quotation marks omitted.) *Zoll* v. *Zoll*, 112 Conn. App. 290, 304, 962 A.2d 871 (2009). In light of the foregoing, we conclude that the court properly declined to reconsider the basis of its order concerning the children's CUTMA accounts. Accordingly, we affirm the court's judgment concerning the CUTMA accounts in AC 30070.

V

## AC 30636

In her fifth and fifth amended appeals, in AC 30636, the plaintiff challenges the trial court's decision granting the defendant's request for attorney's fees incurred in defending against the plaintiff's motion for contempt. The plaintiff claims that the court's finding of bad faith is not supported by the evidence in the record and that the award of attorney's fees is therefore invalid. The defendant responds that this court lacks jurisdiction to hear this appeal because the appeal was not taken from a final judgment. We dismiss the plaintiff's appeal in AC 30636 for lack of subject matter jurisdiction but reverse the award of attorney's fees pursuant to the plaintiff's amended appeal in AC 30636.

The following additional facts and procedural history are relevant to these appeals. On July 8, 2008, the plaintiff filed a motion for contempt alleging that the defendant had failed to comply with certain provisions of the dissolution judgment. Specifically, the plaintiff alleged that the defendant had failed to convey two kayaks, an oriental rug and a variety of tools to her. The plaintiff also alleged that the defendant had failed to cover certain expenses related to the transportation, education and care of the parties' children, and that the defendant had violated the agreed parenting plan by leaving the children, aged ten and sixteen, unattended for more than six hours on several occasions. The defendant filed an objection on July 15, 2008, denying the material allegations of the plaintiff's motion and requesting an award of attorney's fees and sanctions.

After hearing two days of argument and testimony from both parties, the court, on October 27, 2008, issued a memorandum of decision denying the plaintiff's motion for contempt. The court concluded that the plaintiff had abandoned her allegations concerning the

kayaks, the agreed parenting plan and certain of the children's education expenses. The court also concluded that the plaintiff had failed to prove the remaining allegations of her motion by a preponderance of the evidence. Accordingly, the court found that the defendant was not in contempt of the dissolution judgment. Moreover, the court concluded that the motion was not brought in good faith and requested that the defendant's attorney submit an affidavit of attorney's fees incurred in responding to the plaintiff's motion for contempt. Thereafter, the plaintiff filed a motion to reargue her motion for contempt on November 17, 2008, which the court denied on December 3, 2008. The plaintiff then filed an appeal with this court on December 23, 2008, AC 30636, challenging the trial court's award of attorney's fees to the defendant.

On August 4, 2009, the defendant filed an affidavit of attorney's fees in which his attorney, Debra C. Ruel, attested to a total of $10,905 in fees incurred in responding to the plaintiff's motion for contempt. On August 26, 2009, the plaintiff filed a motion for a hearing on the defendant's affidavit of attorney's fees. Following a hearing, the court granted the defendant's request for attorney's fees in the amount of $6127.50. The plaintiff then filed an amended appeal in AC 30636 with this court on September 15, 2009, again challenging the trial court's award of attorney's fees to the defendant.

As a threshold matter, we must address the defendant's argument that the lack of a final judgment deprives this court of subject matter jurisdiction to consider the plaintiff's appeals. As mentioned previously in this opinion, "[t]he lack of final judgment . . . implicates the subject matter jurisdiction of this court. . . . If there is no final judgment, we cannot reach the merits of the appeal." (Internal quotation marks omitted.) *Singhaviroj* v. *Board of Education,*

124 Conn. App. 228, 231–32, 4 A.3d 851 (2010). "In *Paranteau* v. *DeVita*, [208 Conn. 515, 524 n.11, 544 A.2d 634 (1988)], our Supreme Court determined that [a] supplemental postjudgment award of attorney's fees becomes final and appealable . . . not when there is a finding of liability for such fees, but when the amount of fees are conclusively determined. An award of attorney's fees without a determination of the amount of the attorney's fees is not an appealable final judgment." (Internal quotation marks omitted.) *Sullivan* v. *Brown*, 116 Conn. App. 660, 663, 975 A.2d 1289, cert. denied, 294 Conn. 914, 983 A.2d 852 (2009).

It is undisputed in the present case that the plaintiff filed her initial appeal, AC 30636, before the amount of attorney's fees had been conclusively determined. Accordingly, we conclude that the plaintiff's appeal in AC 30636 was not taken from a final judgment. We therefore dismiss that portion of the plaintiff's appeal for lack of subject matter jurisdiction. This conclusion, however, does not end our analysis, as we must now determine whether this court has subject matter jurisdiction over the plaintiff's amended appeal in AC 30636.

With regard to our consideration of the plaintiff's amended appeal, we note that Practice Book § 61-9 provides in relevant part: "If, after an amended appeal is filed, the original appeal is dismissed for lack of jurisdiction, the amended appeal shall not be void as long as the amended appeal was filed from a judgment or order from which an original appeal could have been filed." The foregoing language is the result of an amendment to § 61-9, which became effective on January 1, 2010, during the pendency of the plaintiff's amended appeal. Pursuant to Practice Book § 86-2, "[w]henever a new rule is adopted or a change is made to an existing rule, the new rule or rule change shall apply to all appeals pending on the effective date of the new rule or rule change and to all appeals filed thereafter. . . ."

Accordingly, we conclude that this court has subject matter jurisdiction over the plaintiff's amended appeal in AC 30636.

The court's award of attorney's fees is premised on its finding that the plaintiff acted in bad faith in filing her motion for contempt. As mentioned previously in this opinion, "[w]hether a party has acted in bad faith is a question of fact, subject to the clearly erroneous standard of review." (Internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, supra, 123 Conn. App. 837. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Waterview Site Services, Inc.* v. *Pay Day, Inc.*, supra, 125 Conn. App. 566–67.

Our Supreme Court has determined that in order "[t]o ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 845.

The standard for colorability varies depending on whether the claimant is an attorney or a party to the litigation. Id., 846–48. If the claimant is an attorney, a claim is colorable if "a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established." (Internal quotation marks omitted.) Id., 846. If

the claimant is a party to the litigation, "a claim is colorable, for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her first hand knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Internal quotation marks omitted.) Id., 847.

Applying these principles to the case at hand, we conclude that the trial court was not justified in awarding attorney's fees to the defendant. Although the court found that the plaintiff had filed her motion for contempt in bad faith, the court failed to set forth, with a high degree of specificity, the facts that support its finding. With respect to the colorability of the plaintiff's claim, the factual situation presented in this case is somewhat unique in that the claimant is both a party to the litigation and an attorney licensed to practice law in Connecticut. Nevertheless, because we conclude that the plaintiff's claim satisfies both varieties of the standard for colorability, we need not determine which variety of the standard applies. The court accepted a number of the factual allegations underlying the plaintiff's motion for contempt. Thus, it is impossible to conclude that the plaintiff, either as an attorney or a party to the litigation, could not reasonably have concluded that the facts underlying her claim of contempt might be established. Accordingly, we conclude that this portion of the plaintiff's appeal must be reversed and the case remanded with direction to vacate the award of attorney's fees to the defendant in AC 30636, as amended.

The appeal in AC 30067 is dismissed for lack of a final judgment. The judgments denying the plaintiff's motions for modification of child support in AC 30068 and awarding attorney's fees to the defendant in AC

30069 are reversed and the case is remanded for evidentiary hearings consistent with this opinion. The judgment is affirmed in AC 30070. The appeal in AC 30636 is dismissed for lack of a final judgment, and the judgment in AC 30636, as amended, awarding attorney's fees to the defendant, is reversed and the case is remanded with direction to vacate that award.

In this opinion ROBINSON, J., concurred.

LAVINE, J., concurring in part and dissenting in part. I agree with the majority's resolution of the appeals in AC 30067, AC 30070, AC 30636 and AC 30636, as amended. I concur in the result of AC 30069, but on different grounds.

I respectfully disagree, however, that it was improper for the court to deny the motion, and the amended motion, to modify child support, health insurance and life insurance (motions to modify) filed by the plaintiff, Maria F. McKeon, and therefore I dissent in AC 30068.

The following detailed procedural history is relevant to AC 30068 and AC 30069. On December 31, 2007, following a ten day trial in which both parties were represented by counsel, the court issued a twenty-five page memorandum of decision dissolving the parties' marriage.[1] At the time of dissolution, two of the parties'

[1] In its memorandum of decision, the court made the following findings of fact, among others. During the course of the marriage, the defendant, William P. Lennon, was the primary wage earner, and, at the time of the dissolution judgment, was earning substantial wages and generous benefits, including a base salary of $225,420, annual bonus, stock options, restricted stock awards and a pension. It is likely that he will continue to grow with Electric Boat, receive further promotions and become one of the top ten employees in upper management. He was promoted to vice president during the pendency of the dissolution trial.

During the course of the marriage, the plaintiff was employed full-time as a corporate attorney, sometimes earning in excess of the defendant's salary. They agreed that she would be the primary caregiver of their three children, and she worked part-time, sacrificing her career aspirations for the benefit of the family and in recognition of the defendant's career potential. She is highly skilled and capable. At the time of the dissolution, she

three children were minors, and the court issued the following child support order.[2]

The defendant, William P. Lennon, "shall pay to [the plaintiff] $439 per week as child support for the two minor children. *Said support is in accordance with the . . . child support guidelines* [(guidelines)].[3]

"The parties shall share (50 [percent plaintiff] and 50 [percent defendant]) the cost for: [1] work-related after-school care and school transportation; and [2] extracurricular activities for the minor children, in excess of

worked as a freelance corporate attorney at $200 per hour and has the benefit of full-time child care at a $30,000 salary together with hired assistance for housecleaning and home maintenance. From mid-July, 2007, to mid-December, 2007, she earned $78,500, gross, while recovering from a fractured pelvis and devoting many days and hours to the dissolution litigation.

The court also found that the parties spend more than they earn on a lavish lifestyle, which includes three residences, three private school tuitions, a horse and horse shows, boats, vacations, travel and legal fees exceeding $300,000. This has been aggravated by the plaintiff's earning little in 2005, 2006 and the first half of 2007.

The plaintiff suspected the defendant of infidelity, but she failed to prove that suspicion by a fair preponderance of the evidence. The court found the cause of the dissolution is more the plaintiff's fault than the defendant's.

[2] In its memorandum of decision, the court made findings and issued orders addressing the parties' real estate, retirement assets, nonretirement assets, parenting plan, child support, alimony, education, tax exemptions, information and returns, medical and dental insurance and expenses and life insurance.

[3] Our Supreme Court has concluded that our statutes and guidelines relating to child support require that all child support awards be made in accordance with the principles established in the child support guidelines. See *Maturo* v. *Maturo*, 296 Conn. 80, 94–95, 995 A.2d 1 (2010).

"The court also concluded that [a]lthough the guidelines grant courts discretion to make awards on a case-by-case basis above the amount prescribed for a family at the upper limit of the schedule [of basic child support obligations (schedule) set forth in § 46b-215a-2b [f] of the Regulations of Connecticut State Agencies] when the combined *net weekly income of the parents exceeds that limit, which is presently $4000* . . . the guidelines also indicate that such awards should follow the principle expressly acknowledged in the preamble and reflected in the schedule that the child support obligations as a percentage of the combined net weekly income should decline as the income level rises." (Emphasis added; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 367–68, 999 A.2d 721 (2010).

$150 per activity, which shall be agreed upon in writing or by [e-mail]; and [3] the parties shall continue to employ a child care assistant ([assistant]). The parties shall use the [assistant] for the same type of services as she has provided in the past. The [assistant] shall continue to work [thirty] hours per week plus 200 miles per week to provide flexibility for both parents to work, to be with another child, or because they are otherwise unavailable (i.e., medical reasons, counseling appointments, teacher meetings, school functions, etc.). The parties shall share the cost of her salary, employment taxes, [gasoline] at the [Internal Revenue Service] allowable mileage reimbursement, vacation pay, pension and any other costs associated with the [assistant's] employment [fifty-fifty]. The [plaintiff] shall be required to file all tax forms necessary to forward all employment taxes related to the [assistant's] employment. She shall provide a copy of all such filings to [the defendant] within five days of filing.

"*Private School.* The [parties] shall equally divide the tuition for their [older] son . . . at Loomis Chaffee School, for his upcoming [tenth, eleventh and twelfth] grade years, which tuition is currently $30,000 per year. The [parties] shall equally divide the tuition for their [younger] son . . . at Renbrook School, for his upcoming [sixth, seventh and eighth] grade years, which tuition is currently $26,000 per year. When and if [the younger son] attends Loomis Chaffee School (or a similar private high school as agreed to by both parents), the parents shall equally pay the tuition.

"The cost of extracurricular activities and books, fees, sports equipment, calculators, any computers required for school, testing fees, school trips, field trips and bus transportation for private school over $150 shall be shared equally between the [parties] with the [plaintiff] paying for anything less than $150. This sec-

tion shall be modifiable based on a substantial change of financial circumstances."[4] (Emphasis added.)

On January 18, 2008, the plaintiff filed a forty-one page motion for reconsideration and/or reargument (motion for reconsideration).[5] About five and one-half pages of the motion fall under the heading of "child support amount not in compliance with guidelines." The motion states that "[t]he award of $439 per week for the two minor children is not in accordance with the [guidelines] for the following reasons . . . ."[6]

---

[4] The record also contains an agreement of the parties, which is dated December 18, 2007, and states: "The [parties] shall equally share up to $36,000 (each parent $18,000) of the college education expenses for each child for each year of college. Said expenses shall be those expenses as defined by . . . General Statutes § 46b-56c.

"Notwithstanding the foregoing, and for [their daughter] only, the [defendant] shall receive a credit towards his share each year for the amount of $3,500, which [daughter] will pay for through student loans. This provision is in accord with the [parties'] agreement regarding the allocation of expenses for [daughter's] horse. ([S]ee schedule A attached hereto.)

"Except for exceeding the 'UCONN' cap, all other provisions of the statute shall apply, including § 46b-56c (h) regarding modifiability."

[5] In addition to seeking reconsideration of the court's child support order, the plaintiff sought reconsideration of the court's orders pertaining to the defendant's pension (preretirement survivor annuity, cost of living adjustments, early retirement subsidies or other increases provided by the plan); the defendant's 401 (k) plan (gains and losses, distribution of pension assets as inequitable); the children's medical coverage, life insurance requirements, valuation of assets, assignment of tax issues as violative of the pendente lite orders, allowing the defendant to hold $160,000 for three years and creating a significant financial hardship for the plaintiff and depriving her of needed cash; and a pendente lite motion for reimbursement that was not heard.

Under the heading "[a]llowing [the defendant] to hold $160,000 for [three] years creates a significant financial hardship to [the plaintiff] and deprives her of needed cash," the plaintiff stated: The defendant "makes over $600,000 per year and has more than enough cash to pay [the plaintiff] her asset. *He will receive more than $100,000 after tax cash by March 31, 2008, without considering his salary of $225,000.*" (Emphasis added.)

[6] The plaintiff listed the following bullet points in her motion as reasons the court's order of child support was not in compliance with the guidelines: "[n]et incomes of [p]arties exceeds the maximum under the [g]uidelines," "[s]upport calculations do not include [the defendant's] 'perks'," "[s]upport calculations do not include [the plaintiff's] business deductions for self-

The court denied the motion for reconsideration in a memorandum of decision dated March 27, 2008.[7] It noted that the "purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . A reconsideration implies reexamination and possibly a different decision by the [court] which initially decided it. . . . While a modification hearing entails the presentation of evidence of a substantial change in circumstances, a reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law." (Citations omitted; internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202–203, 655 A.2d 790 (1995). Reargument "may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Citation omitted; internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001).

The court found that, during trial, the plaintiff had submitted proposed orders, amended proposed orders, revised and amended proposed orders and final revised proposed orders. The defendant also submitted proposed orders. In issuing its orders, the court incorporated directly many of the proposed orders from each

employment," "[c]osts assigned to [the plaintiff] under orders exceed child support awarded," "[s]chool costs that do not exceed $150," "[c]ar expenses for [the two older children]" and "[m]ileage for [assistant]."

[7] In its March 27, 2008 memorandum of decision, the court also stated: "[A] motion to reargue should be granted if the parties bring to the court's attention some important precedent that is contrary to the ruling of the court if the court's ruling is based on erroneous facts and should not be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.)

party. The court also found that much of the plaintiff's motion for reconsideration relied on facts that were not admitted into evidence or arguments that the court already had considered. The court found that it had neither misapplied any principle of law nor overlooked any evidence.[8] It noted that a court reviewing a motion to reargue is not permitted to order postjudgment modification of a property distribution award. See General Statutes § 46b-81; *Magowan* v. *Magowan*, 73 Conn. App. 733, 742, 812 A.2d 30 (2002), cert. denied, 262 Conn. 934, 815 A.2d 134 (2003). After clarifying certain medical coverage issues, the court denied the plaintiff's motion for reconsideration. Neither party appealed from the judgment of dissolution or the denial of the motion for reconsideration.

On April 28, 2008, the plaintiff, an attorney by profession, representing herself, filed a motion to open, post-judgment (motion to open).[9] That motion states, in part, that the "[p]*laintiff attempted to have the items raised in this Motion to Open corrected through a Motion to Reargue.*" (Emphasis added.) The defendant filed an objection to the motion to open and requested attorney's fees if the court found the motion to open frivolous, duplicative and without merit.

The court ruled on the motion to open in a memorandum of decision filed June 10, 2008. The court found

---

[8] The court rejected the plaintiff's argument that it failed to adopt the opinions of her expert, Arthur Assantes, as the court may exercise its discretion regarding the opinions of expert witnesses. See *Evans* v. *Taylor*, 67 Conn. App. 108, 113, 786 A.2d 525 (2001).

[9] The plaintiff identified eight issues in her motion to open: "Judgment orders Support for Child Over Age of Majority," "Failure to disclose assets is fraud," "Failure to award the pre-retirement survivor annuity will deny Plaintiff her entire General Dynamics pension if Defendant dies prior to retirement," "COLAs, Pre-Retirement Survivor Annuity, COLA and other increases," "Gains and Losses on Pensions," "Mortgage and Mortgage Rate Leave Plaintiff and Children Financially Pinned," "Use of Beach House Not in Best Interest of Children," and "Tax Reporting Prohibited by IRS."

that, under the heading of "[m]ortgage and [m]ortgage [r]ate [l]eave [p]laintiff and [c]hildren [f]inancially [p]inned," the plaintiff was seeking to reargue a property distribution. The court, however, identified four financial issues that required an evidentiary hearing and ordered the parties to secure a trial date from the family case flow manager for a hearing on those four issues.[10] The court reserved judgment on the defendant's request for attorney's fees until the outstanding issues were resolved. See footnote 10 of this dissent.

*Before the court had ruled on the plaintiff's motion to open,* however, the self-represented plaintiff, on May 8, 2008, filed a motion entitled, "[m]otion to [m]odify [c]hild [s]upport, [h]ealth [i]nsurance and [l]ife [i]nsurance—[p]ostjudgment," which contained a laundry list of seven requests. Request number one stated that "the child support orders of $439 per week . . . be modified to provide an increased amount of child support as the current amount substantially deviates from the [guidelines] as provided in . . . General Statutes § 46b-86 (a) which states that a modification may be made 'upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a . . .' and that the awarded amount does not comply with the requirements of [General Statutes] § 46b-84 which states that 'upon dissolution, the parents of a minor child of the marriage, shall maintain the child according to their

[10] The court stated, in part, that the "plaintiff's claims number four (postretirement survivor annuity benefits), five (cost of living allowances), number six (gains and losses on pension) and number nine (tax reporting for [assistant]) raise serious issues, which, in the interests of justice and equity, justify further consideration. If in fact, as the plaintiff argues, the memorandum of decision should be clarified so that the plaintiff can receive benefits which will cost the defendant nothing, it should be considered. Those claims raise factual issues, which must be addressed at an evidentiary hearing. For that reason, the parties are ordered to secure a trial date from the family case flow office for an evidentiary hearing on those four issues only."

respective abilities,' and that the amount provided does not allow the children to maintain their lifestyle as provided in the [g]uidelines."[11] The plaintiff sought an increase in child support to $1700 per week and an order that the parties share equally all costs for their sons' educations at the Renbrook School and the Loomis Chaffee School, recreational activities and transportation to and from school, and the assistant and the older son's motor vehicle. The plaintiff also asked the court to rescind its order regarding her life insurance obligation and to place certain conditions on the defendant's life insurance obligation.

The defendant objected to the plaintiff's motion for modification, arguing that the plaintiff could not prove a factual or legal basis for modification under § 46b-86, as the motion for modification did not comply with

[11] The plaintiff also moved "the [c]ourt to modify its orders dated December 31, 2007 as follows:

"2. . . . orders relating to the costs for education be modified and/or clarified to provide for equitable support by both parents.

"3. . . . orders relating to the costs for the children be modified and/or clarified to provide for equitable support by both parents.

"4. . . . orders relating to the costs for childcare be modified and/or clarified to provide for equitable support by both parents.

"5. . . . [orders] that the [parties' older] son . . . be allowed to continue to see his out of network counselor.

"6. . . . the life insurance obligation imposed by the [c]ourt be modified to eliminate the requirement that [the] [p]laintiff obtain life insurance for $500,000 for the following reasons:

"a. It is excessive in light of [the] [p]laintiff's child support obligations;

"b. The cost of life insurance is unduly burdensome upon [the] [p]laintiff;

"c. Upon her death, [the] [d]efendant's alimony obligations will cease which amount far exceeds [the] [p]laintiff's child support obligations, thus negating the need for life insurance; and

"d. Providing $500,000 of life insurance will provide a windfall to [the] [d]efendant in the event of [the] [p]laintiff's death, which is contrary to the purpose of the statute allowing for life insurance to be awarded.

"7. . . . the life insurance obligation on [the] [d]efendant be clarified to specify that [the] [p]laintiff is the beneficiary of the life insurance proceeds as long as there is an obligation to pay alimony, and that if there is no alimony obligation, that the [p]laintiff shall be the [t]rustee of the life insurance for the benefit of the children."

Practice Book § 25-26 (e)[12] and merely contained a list of certain requests. Specifically, the defendant contended that the plaintiff did not claim that her motion for modification should be granted due to a substantial change of circumstances since the date of dissolution. As to the plaintiff's claim that the child support order substantially deviated from the guidelines, the defendant pointed out that, in its dissolution judgment, the court found that the child support order was in accord with the guidelines. Moreover, although the plaintiff raised the deviation claim in her motion for reconsideration, the court denied that portion of the motion. The plaintiff did not appeal from that denial. The defendant therefore asserted that the issue of deviation from the child support guidelines is res judicata. The defendant also pointed out that the plaintiff admitted that, with respect to five of the eight issues raised, she was seeking to reargue issues raised in her motion for reconsideration. The defendant requested attorney's fees to defend against the motion if the court found the motion frivolous, duplicative and without merit.

The parties appeared in court to argue the plaintiff's motion to modify on May 27, 2008, at which time the plaintiff filed an amended motion to modify child support, health insurance and life insurance. The court continued the matter to give the defendant an opportunity to respond to the plaintiff's amended motion. Again, the plaintiff claimed that the court's child support order deviated from the guidelines. She also claimed the following substantial change in circumstances: the cost of gasoline and heating oil had increased, the plaintiff's mortgage payment had increased by $88 per month, the

---

[12] Practice Book § 25-26 (e) provides: "Each motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed." The plaintiff's amended motion fails to include the outstanding order.

defendant's income had increased since 2007 due to bonus, stock options and restricted stock, the housing market had decreased, thereby devaluing the plaintiff's home and the cost of the children's education had increased in excess of $10,000.

The defendant objected to the amended motion. The defendant noted that "each motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and the date thereof to which the motion for modification is addressed. . . . Practice Book § 25-26 (e). Only the issues properly presented to the [c]ourt, pursuant to the requirements of . . . Practice Book § 25-26 (e), may be considered by the [c]ourt in its adjudication of a motion to modify a dissolution of marriage judgment. See Gaffey [v. Gaffey, 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005)]." (Citations omitted; internal quotation marks omitted.) The defendant argued that the plaintiff could not demonstrate a substantial change since the court issued its dissolution orders and that the court's child support, health insurance and life insurance orders had to be contextualized in light of the total family support awards to the plaintiff and the parties' children, and the court's safe harbor provision.[13] See also footnote 2 of this dissent.

[13] The court awarded the plaintiff $900 a week as alimony for a period of fourteen years, nonmodifiable only as to term. The alimony orders were based on the defendant's annual base salary of $225,000 and the plaintiff's earning capacity of $100,000 for 2007-2008. The plaintiff was granted a " 'safe harbor' " to earn up to $195,000, and the defendant was to have $250,000 without it being deemed a substantial change in circumstances. As additional alimony, the plaintiff was to receive 50 percent of the defendant's gross annual bonus for the years 2008, 2009 and 2010. Thereafter, as additional alimony, the plaintiff was to receive 40 percent of the defendant's gross annual bonus for the years 2011, 2012 and 2013. Thereafter, as additional alimony, the plaintiff was to receive 30 percent of the defendant's gross annual bonus for the years 2014 through 2021.

On June 10, 2008, the court issued a memorandum of decision denying the motions to modify. The court found that the plaintiff sought an increase in child support from $439 per week to $1700 per week. It also found that at the time of trial, the plaintiff submitted guideline worksheets requesting child support in the amount of $553 per week. Moreover, in its dissolution judgment, the court found that the plaintiff had an earning capacity of $100,000 per year, the defendant had an earning capacity of $225,000 per year and that the child support figure of $439 per week was appropriate and complied with the guidelines. Although the plaintiff claimed that the court's order of child support "substantively deviates" from the guidelines, the court made a specific finding in its dissolution judgment that the order, in fact, complied with the guidelines. The plaintiff failed to take an appeal from that judgment, and the court found the claim to be res judicata.

The court also noted the plaintiff's claim that there have been financial changes since the December 31, 2007 judgment but concluded that it was "hard-pressed to deem them to be substantial changes. The factual changes enumerated by the plaintiff include the price of gasoline, the cost of heating oil, a mortgage payment increase of $88 per month, the devaluation of the plaintiff's home due to the housing market and the rising cost of the children's education expenses." The court found that the factual changes identified by the plaintiff "are not substantial, and many of them affect the defendant equally." The court also found that the plaintiff's request to modify the allocation of the cost of their sons' educations at the Renbrook School and the Loomis Chaffee School, recreational activities and motor vehicle expenses and the cost of the assistant were considered at great length during the ten day trial and were addressed in the dissolution judgment. The court found that the plaintiff essentially was

"attempting to reargue those very points by way of a motion to modify." The court concluded that the plaintiff had failed to demonstrate a substantial change in circumstances since the memorandum of decision in the dissolution judgment.

With respect to the plaintiff's request that the parties' older son be permitted to see his out of network counselor, the court found that the issue was argued at trial and raised again in the plaintiff's motion for reconsideration. The court quoted from its memorandum of decision on the motion for reconsideration and concluded that "inasmuch as this issue has already been ruled on twice, the motion to modify is denied." As to the plaintiff's request that the court rescind its order that she maintain $500,000 in life insurance and modify its order requiring the defendant to maintain $2 million in life insurance, the court noted that § 46b-86 governs modifications of dissolution judgments and requires a substantial change in circumstances. The court stated that "[a] careful reading of the plaintiff's motion to modify dated May 8, 2008, and plaintiff's [amendment] to [the] motion to modify dated May 27, 2008, reveals no such showing. The motions are essentially a list of requests for the court to change its mind regarding issues which it has carefully considered and reconsidered. See memorandum of decision regarding motion to reargue dated March 27, 2008. The motion to modify and the amendment to the motion to modify are denied." The court also found that the motions were filed without a good faith basis and that attorney's fees were warranted.

I

AC 30068

The plaintiff claims that it was improper for the court to deny her motions to modify child support without holding a hearing and to conclude that her claim related

to the guidelines was res judicata. Under the circumstances of this case, I conclude that the court properly determined that the plaintiff's motions to modify "are essentially a list of requests for the court to change its mind regarding issues which it . . . carefully considered and reconsidered." On the basis of my plenary review of the record, I conclude that the court properly denied the motions to amend.

A

The plaintiff claims that the court improperly denied her motions to modify by failing to hold a hearing. The plaintiff's claim fails because the court denied the motions on the basis of their substance, not the title of the motions.

"The interpretation of pleadings is an issue of law. As such, our review of the court's decision in that regard is plenary." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, supra, 91 Conn. App. 804 n.1; see also *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003). "In considering a motion [to modify] that involves only a question of law and not one of fact . . . a trial court is not obligated to conduct an evidentiary hearing." *Eckert* v. *Eckert*, 285 Conn. 687, 698, 941 A.2d 301 (2008) (construction of stipulation). Here, the court denied the plaintiff's motions to modify on the basis of their substance, not the titles affixed thereto. Appellate review of the substance of the motions must be viewed through the lens of the trial court, not the limited claim on appeal.

Section 46b-86 "governs the modification . . . of [a] . . . support order after the date of a dissolution judgment." *Borkowski* v. *Borkowski*, 228 Conn. 729, 734, 638 A.2d 1060 (1994). "It is . . . well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree . . . she

must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of [judgment]. . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of [support]. They have chiefly to do with the needs and financial resources of the parties." (Citations omitted; internal quotation marks omitted.) Id., 736. "The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in the circumstances, it may properly consider the motion and, on the basis of the [General Statutes § 46b-82] criteria, make an order for modification." (Citation omitted; internal quotation marks omitted.) *Mundell* v. *Mundell*, 110 Conn. App. 466, 472–73, 955 A.2d 99 (2008). "Each motion for modification shall state the specific factual and legal basis for the claimed modification . . . ." Practice Book § 25-26 (e).

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 62, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008). "Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Internal quotation

marks omitted.) *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 459, 975 A.2d 729 (2009).

In this case, the court determined that the plaintiff's motions for modification essentially were lists of requests for the "court to change its mind regarding issues which it has carefully considered and reconsidered."[14] "Numerous cases provide support for the proposition that a motion is to be decided on the basis of the substance of the relief sought rather than on the form or the label affixed to the motion." *State* v. *Taylor*, 91 Conn. App. 788, 791–92, 882 A.2d 682 (motion to correct sentence sought relief in form of new presentence investigation), cert. denied, 276 Conn. 928, 889 A.2d 819 (2005); see also *Bauer* v. *Bauer*, 130 Conn. App. 185, 21 A.3d 964 (2011) (motion for clarification was motion for modification); *Tobet* v. *Tobet*, 119 Conn. App. 63, 65, 986 A.2d 329 (2010) (motion entitled motion for modification, in essence, motion for allocation of responsibility for daughter's education); *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 261 n.4, 865 A.2d 488 (motion for child support in essence motion for modification), cert. denied, 273 Conn. 916, 871 A.2d 372 (2005); *Jaser* v. *Jaser*, supra, 37 Conn. App. 202–203 (motion for reargument decided as motion for modification). It is the substance of a motion that governs its outcome,

---

[14] The order page attached to the plaintiff's amended motion contains seven enumerated items to be granted or denied: "1. The Child Support be increased to $1700 per week effective as of the date the Motion to Modify was filed. . . . 2. That all costs for the children's education at Renbrook and Loomis be shared equally. . . . 3. That all costs for the children's recreational activities, and for [the older son's] car, gas, repairs, etc. be shared equally. . . . 4. That all costs for driving the children to and from their schools be shared equally and that all costs for the [assistant] be shared equally. . . . 5. That the life insurance obligation on the Plaintiff is eliminated. . . . 6. That the Plaintiff shall be the beneficiary of the Defendant's life insurance for so long as there is an alimony obligation, and that if there is no longer an alimony obligation, that the three children shall be the beneficiaries with the Plaintiff as the Trustee on their behalf. . . . 7. That the Plaintiff shall receive attorneys fees in the amount of $        ."

rather than how it is characterized in its title by the movant. *Ocwen Federal Bank, FSB* v. *Charles,* 95 Conn. App. 315, 320 n.7, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

The plaintiff's position on appeal is that because she invoked the words modification of child support, the court had no discretion to decide the motions to modify without first holding a hearing to determine whether there had been a substantial change in circumstances in the four months since the court dissolved the parties' marriage. In denying the motion for reconsideration, the court noted that it had tried the case on ten days over seven months. Clearly, the court had an opportunity to observe the parties and assess the factors significant to the dissolution, including the prospect that the defendant would do well in his career. See *Schade* v. *Schade,* supra, 110 Conn. App. 62. In denying the plaintiff's motion for reconsideration, the court found that it did not overlook any evidence or misapply the law.

Moreover, in denying the motions for modification, the court was well aware of the series of motions that the plaintiff had filed postjudgment, including a motion to open the judgment in which the plaintiff stated that she previously had tried to have some of the items raised therein "corrected" through a motion to reconsider. The plaintiff's admission that she filed the motion to open as a means to "correct" the dissolution judgment is contrary to the purpose of a motion for reargument and reconsideration. "[A] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *Opoku* v. *Grant,* supra, 63 Conn. App. 692–93. Modifying the court's judgment on such an argument would constitute an impermissible modification. See *Dombrowski* v.

*Noyes-Dombrowski*, 273 Conn. 127, 133, 869 A.2d 164 (2005).

Moreover, the plaintiff had raised questions regarding child support and insurance previously. The court found that it had considered those issues in the two earlier motions and had not misapplied the law. In its judgment, the court stated that its child support orders did not deviate from the guidelines and the plaintiff took no appeal from that determination, even after the court reaffirmed that determination in ruling on the motion for reconsideration. As to the allegations of financial changes, the plaintiff included the price of gasoline, the cost of heating oil, a mortgage payment increase of $88 per month and the devaluation of the plaintiff's home due to the depressed housing market and the rising cost of the children's education.[15] The court found that those changes did not constitute a substantial change and that most affected the parties equally.

Under the circumstances of this case, given the plaintiff's filing of numerous motions within approximately four months of the judgment of dissolution, I conclude that the interrelationship of the motions and the significant difference between the plaintiff's motion to modify and her amended motion required the court to determine the essence of the relief the plaintiff was seeking. I agree with the court that in filing a motion for modification, the plaintiff was looking for a procedural vehicle pursuant to which she could compel the court to change its judgment of dissolution. I find it highly significant that the plaintiff admitted in her motion to open that she was seeking another means to have the court alter its judgment. I conclude that the court correctly found, on the face of the motions to modify, that the facts

---

[15] The plaintiff also claimed that the defendant received a substantial increase over his 2007 income. The plaintiff previously raised that issue in her motion to open. See footnote 5 of this dissent.

articulated by the plaintiff failed to demonstrate that there was a substantial change of circumstances[16] and that the plaintiff merely was seeking to have the court change its carefully considered dissolution judgment. A review of the order page attached to the amended motion; see footnote 14 of this dissent; indicates that the plaintiff was not seeking relief in the form of modified child support pursuant to the guidelines, but absolute payment of a sum certain per week and one half of certain expenses related to the children's education and activities. The relief the plaintiff was seeking did not comply with the guidelines.

B

The plaintiff also claims that the court improperly concluded that her claim that the dissolution order regarding child support fell outside the guidelines was barred by the doctrine of res judicata. I disagree.

"The doctrine of res judicata, or claim preclusion, prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all of any part of the transaction, or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made. . . . The doctrine of res judicata [applies] . . . as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction . . . and promotes judicial

[16] General Statutes § 46b-86 (a) provides in relevant part: "There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. . . ." See footnote 3 of this dissent regarding the application of the guidelines to weekly income that exceeds $4000.

economy by preventing relitigation of issues or claims previously resolved." (Citations omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC,* 123 Conn. App. 583, 590, 2 A.3d 963, cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010).

The doctrine of res judicata is applicable to dissolution actions. *Borkowski* v. *Borkowski,* supra, 228 Conn. 738. "This policy of avoiding duplicitous litigation is particularly important in the context of family law where courts should welcome the opportunity to ease the burden of post-divorce litigation over enforcement or modification of alimony claims . . . and attempt to foster amicable dissolution and certainty." (Citation omitted; internal quotation marks omitted.) Id., 738–39.

To briefly restate the procedural history relevant to the plaintiff's claim, in its judgment of dissolution the court awarded the plaintiff $439 per week as child support and found that the amount of support was in accord with the guidelines. In her motion for reconsideration, the plaintiff appropriately cited *Wasson* v. *Wasson,* 91 Conn. App. 149, 161, 881 A.2d 356, cert. denied, 276 Conn. 932, 890 A.2d 574 (2005), noting that "a reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law." (Internal quotation marks omitted.) The plaintiff contended that the award of $439 per week for the two minor children was not in accord with the guidelines because the guidelines provide for a maximum net income of $4000 per week. The parties' combined net weekly income is $4370, which exceeds the guidelines. The plaintiff complained that the child support award provided less than $23,000 a year for two children. The court denied the motion for reconsideration, and the plaintiff did not appeal. In her motion to modify, the plaintiff requested "that the child support orders of $439 per week ($22,828

per year) be modified to provide an increased amount of child support as the current amount substantially deviates" from the guidelines established pursuant to General Statutes § 46b-215a. In her amended motion to modify, the plaintiff focused her arguments on a substantial change of circumstances under § 46b-86 (a), not § 46b-215a-2 (b) of the Regulations of Connecticut State Agencies relating to a substantial deviation from the guidelines.

The defendant objected to the motions to modify on the basis of a deviation from the guidelines, claiming that the issue was res judicata and that the plaintiff had failed to take an appeal. The court denied the plaintiff's motions to modify regarding the claim that the child support award deviated from the guidelines pursuant to the doctrine of res judicata.[17] After reviewing the record, I conclude that the court properly denied the motions to modify on the basis of the plaintiff's guidelines claim. The parties submitted guideline calculations at trial, and the court made an award that it concluded complied with the guidelines. The court denied the plaintiff's motion to reconsider, which included a deviation claim, and the plaintiff did not appeal. The issue of whether the court's child support order complies with the guidelines therefore was litigated.

---

[17] In its memorandum of decision on the motions to modify, the court stated: "The plaintiff seeks to have the child support of $439 per week be increased to $1700 per week. It should be noted that at trial, the plaintiff submitted a child support guidelines worksheet which requested child support in the amount of $553 per week. The court found, based on the [plaintiff's] earning capacity of $100,000 per year and the [defendant's] earnings of $225,000 per year that [the] child support figure of $439 per week was appropriate and complied with the child support guidelines. While the plaintiff argues that the child support order 'substantially deviates from the . . . guidelines,' the court made a specific finding that it in fact did comply. There was no appeal from that finding or order, and, thus, the plaintiff is barred by the doctrine of res judicata to further argue that particular point."

On appeal, the plaintiff relies on *Levine* v. *Levine*, 88 Conn. App. 795, 871 A.2d 1034 (2005), to support her claim. *Levine*, however, is distinguishable in that the relevant facts in *Levine* are prospective and the facts here are retrospective. *Levine* concerns an alimony provision in a dissolution agreement, to wit: "Ten years from the date hereof, unless sooner terminated, alimony shall be reduced to [$1] per year, modifiable upwards only in the event of the Wife's medical disability which prevents the Wife from gainful employment . . . ." (Internal quotation marks omitted.) Id., 803. Several months prior to the end of the ten year period, the wife filed a motion for modification claiming that she was unable to work. The motion was denied.[18] Subsequent to the tenth anniversary, the wife filed another motion for modification in which she made the same claim. The trial court hearing the second motion denied it, ruling that the issue had been decided when the ruling on the earlier motion for modification was denied. Id., 803–804. This court reversed the judgment of the trial court denying the second motion for modification, reasoning that the question of the wife's health and employability could not have been determined prior to the passing of ten years. The question had to be decided on the basis of the facts known about the wife's health after ten years, which was unknowable previously. Id., 804.

In this case, the plaintiff claimed in her motion for reconsideration and in her motions to modify that the child support awarded by the court at the time of dissolution deviated from the guidelines. In dissolving the marriage, the court concluded that the child support award complied with the guidelines. The court considered the guidelines worksheet submitted by the parties

[18] The reason for the denial is not known, but counsel represented that the motion was premature, as the tenth year had not been completed. *Levine* v. *Levine*, supra, 88 Conn. App. 803.

and rendered its award. The matter was litigated, and the plaintiff may not revisit the court's initial child support award except by means of a timely appeal.[19] The court therefore properly determined that the issue as to whether its child support award deviated from the guidelines is res judicata.

For the foregoing reasons, I conclude that the court properly denied the plaintiff's motions to modify and would affirm the judgment in AC 30068.

## II

## AC 30069

The plaintiff claims that the court improperly awarded the defendant attorney's fees to defend against the motions to amend child support, health insurance and life insurance. I agree.

The following procedural history is relevant to the resolution of the plaintiff's claim. In his objection to the plaintiff's motion to modify, which was filed on May 23, 2008, the defendant asked the court to award him attorney's fees and costs to defend against the plaintiff's motion if the court found that the motion is frivolous, duplicative and without merit. The defendant, however, cited no legal basis for such an award. In his objection to the plaintiff's amended motion to modify, the defendant requested attorney's fees pursuant to *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007) (en banc).

In its memorandum of decision regarding the motions to modify, the court found "that the motions to modify were filed without a good faith basis and that the assessment of attorney's fees is warranted. Counsel for the

---

[19] This is not to say that in the future, if there is a substantial change in the financial circumstances of the parties, the court could not modify its child support order. Such a modification would be granted, however, on the basis of a substantial change of financial circumstances, not on the ground that the initial award deviated from the guidelines.

defendant shall file an affidavit detailing the fees expended regarding these two motions only." On June 30, 2008, the defendant submitted a revised affidavit of attorney's fees in the amount of $12,977.50 and costs of $17.69. On July 2, 2008, the court awarded the defendant counsel fees in the amount of $6497.60 without explanation.[20]

As the majority notes, the parties disagree as to the standard of review applicable to the plaintiff's claim. This disagreement stems in part from the court's failure to cite the legal basis for awarding the defendant attorney's fees. The majority concludes that the clearly erroneous standard is applicable because the court found that the motions to modify were filed without a "good faith basis," and, therefore, *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004) ("opposing party has acted in bad faith"), applies. The defendant argues that in this marital dissolution action, the abuse of discretion standard of *Ramin* v. *Ramin*, supra, 281 Conn. 351, applies. I agree with the defendant on the basis of the public policy rationale for awarding attorney's fees in dissolution actions as articulated in *Ramin*. The rule applicable to the issue controls the standard of review,

---

[20] The court later articulated its decision with regard to its award of attorney's fees. The court set forth the motions filed by the plaintiff and the defendant's response thereto. The plaintiff objected to the award of attorney's fees but never requested a hearing on the issue of attorney's fees or contemporaneous time sheets in support of the defendant's request for attorney's fees. The plaintiff claimed that the requested attorney's fees were "gouging" and she asked to see the time records of opposing counsel for services unrelated to the subject motions. The court noted that three lawyers from the law firm representing the defendant had appearances in the file. Two of the lawyers were in court during the pendency of the matter, one of the less experienced lawyers in the role of second chair. The court considered all of the factors identified in *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005), and was particularly impressed with "the skill requisite to perform the legal service properly" and "the experience, reputation and ability of the attorneys." The court awarded the defendant 50 percent of his requested fees.

not the language used by the court in its memorandum of decision.

"The so-called 'American rule' for the award of attorney's fees to the prevailing party bars such an award 'except as provided by statute or in certain defined exceptional circumstances . . . .'" *Maris* v. *McGrath,* supra, 269 Conn. 835. "General Statutes § 46b-62 governs the award of attorney's fees in dissolution actions and provides that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [General Statutes §] 46b-82." (Internal quotation marks omitted.) *Ramin* v. *Ramin,* supra, 281 Conn. 351. In *Maguire* v. *Maguire,* 222 Conn. 32, 44, 608 A.2d 79 (1992), our Supreme Court articulated "the general rule . . . that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." *Ramin* v. *Ramin,* supra, 352.

"Under *Maguire,* in a case . . . in which an innocent party has incurred substantial attorney's fees as a result of the other party's litigation misconduct, the innocent party must nevertheless bear the full brunt of her attorney's fees, as long as the innocent party has ample liquid funds to pay her attorneys, and as long as the lack of an award of attorney's fees would not undermine the court's other financial orders. This result would follow regardless of the seriousness, duration and pervasiveness of the other party's litigation misconduct, regardless of how high the resultant cost to the innocent party, and regardless of any advantage the wrongdoer may have secured through his litigation misconduct, such as, for example, the successful concealment of a

portion of his assets."[21] Id., 352–53. *Ramin* therefore established an exception to the statutory limitation on the award of attorney's fees under § 46b-62. That exception grants the court "discretion to award attorney's fees to a party who incurs those fees largely due to the other party's *egregious* litigation misconduct . . . ." (Emphasis added.) Id., 353.

Although one could characterize the motions to amend filed by the plaintiff as frivolous, especially her claim that the court's child support award deviated from the guidelines, I cannot conclude that her litigation misconduct was egregious, and the court made no such finding. For those reasons, I concur in the majority opinion in AC 30069.

---

[21] In *Ramin*, the defendant husband failed or refused over a number of years to comply with his wife's discovery requests, was deceitful and exhibited distain for the judicial process. *Ramin* v. *Ramin*, supra, 281 Conn. 355–56.