******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIA F. MCKEON *v.* WILLIAM P. LENNON
(SC 19470)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa and Vertefeuille, Js.

*Argued January 27—officially released May 17, 2016*

*Campbell D. Barrett*, with whom were *Jon T. Kukucka* and, on the brief, *Johanna S. Katz*, for the appellant (plaintiff).

*Debra C. Ruel*, with whom were *Anne C. Dranginis* and *James M. Ruel*, for the appellee (defendant).

*Giovanna Shay*, *Lucy Potter*, *Anne Louise Blanchard*, *Shelley White* and *Steve Dembo* filed a brief for Greater Harford Legal Aid et al. as amici curiae.

*Louise Truax* and *Leslie Jennings-Lax* filed a brief

for the American Academy of Matrimonial Lawyers, Connecticut Chapter, as amicus curiae.

*Samuel V. Schoonmaker IV* and *Wendy Dunne DiChristina* filed a brief for the Connecticut Bar Association as amicus curiae.

*Opinion*

ZARELLA, J. In this certified appeal, we address two important issues relating to child support orders. The first issue is whether the Appellate Court properly concluded, based on this court's reasoning with respect to the modification of alimony orders in *Dan* v. *Dan*, 315 Conn. 1, 10, 105 A.3d 118 (2014), that the supported party must show circumstances beyond the increased income of the supporting party to establish the substantial change in circumstances required to justify the modification of a child support order under General Statutes § 46b-86 (a). The second issue is whether the trial court should consider exercised stock options, restricted stock and employment perquisites in calculating the supporting party's gross income to determine whether there has been a substantial change in circumstances under § 46b-86 (a). The plaintiff, Maria F. McKeon, claims that the Appellate Court, in affirming the trial court's denial of her two separate motions to modify the original child support order, incorrectly concluded that alimony and child support orders are subject to the same modification requirements under § 46b-86 (a), and, therefore, the court improperly applied the reasoning in *Dan* when denying her motions. See *McKeon* v. *Lennon*, 155 Conn. App. 423, 434, 109 A.3d 986 (2015). The plaintiff also claims that the Appellate Court incorrectly concluded that the trial court had not abused its discretion in declining to consider income from stock options, restricted stock and employment perquisites received by the defendant, William P. Lennon, as part of his executive compensation package when calculating the defendant's gross income for the purpose of determining whether there had been a substantial change in his financial circumstances following the dissolution of the parties' marriage. See id., 440, 441. The plaintiff thus seeks reversal of the Appellate Court's judgment and a remand to the trial court to consider these sources of income in deciding the plaintiff's motions. The defendant agrees with the plaintiff that the Appellate Court's reliance on the reasoning in *Dan* was improper but characterizes that reliance as dictum. He also argues that the trial court properly calculated his gross income without considering his stock benefits and employment perquisites, and, therefore, the Appellate Court properly upheld the trial court's conclusion that the plaintiff did not establish the substantial change in circumstances required for the granting of her motions. We reverse in part the judgment of the Appellate Court.

The following relevant facts are set forth in the Appellate Court's opinion. "[This appeal] arise[s] from a series of postjudgment motions related to the parties' 2007 dissolution of marriage. The plaintiff and [the] defendant were married on August 29, 1981. During their twenty-six year marriage, the parties had three children.

In 2005, the plaintiff initiated an action for dissolution of marriage. On December 31, 2007, the court rendered judgment dissolving the marriage . . . and entered various orders.

"In the dissolution judgment, the court made several relevant factual findings. The court found that the defendant was a vice president at Electric Boat [Corporation], earning a base salary of $225,420, an annual bonus, stock options, restricted stock awards, and a pension. The court found that the plaintiff was a highly skilled and capable corporate attorney, who in the past had sometimes earned in excess of the defendant's salary. In the years leading up to the divorce, the plaintiff had worked part-time in order to be the primary caregiver to their three children. Despite working part-time, she had been able to earn gross income of $78,500 from mid-July, 2007, through December 12, 2007.

"The court issued various orders in connection with the dissolution judgment, including child custody, division of assets of the marriage, and alimony and child support. First, the dissolution judgment set out a parenting plan regarding the parties' two minor children. The parties were to share joint legal custody of the children, but the plaintiff's home would serve as the children's primary residence. Next, the dissolution judgment ordered the defendant to pay the plaintiff $439 per week in child support for the parties' two minor children. The dissolution judgment also ordered the parties to each pay 50 percent of the cost of the children's child care, their after school care and transportation, and their private school tuition. The judgment ordered the parties to share all costs over $150 for the children's extracurricular activities, while the plaintiff was ordered to pay for all costs under $150.

"The dissolution judgment also awarded alimony to the plaintiff in the amount of $900 per week for a period of fourteen years. This order was modifiable, but not terminable, upon the plaintiff's remarriage or cohabitation. [In addition] [t]he court awarded the plaintiff . . . [an irrevocable 50 percent interest in all stock options awarded, granted or otherwise credited to the defendant as of the date of dissolution and] an irrevocable interest in the defendant's future annual employment bonuses, executive stock options, and awards of restricted stock. [Specifically] [t]he plaintiff was to receive 50 percent of the defendant's bonuses, stock options, and restricted stock awarded in 2008, 2009, and 2010. The plaintiff was to then receive 40 percent of the defendant's bonuses [future stock options, and restricted stock awarded] in 2011, 2012, and 2013, and . . . 30 percent [of the defendant's bonuses, future stock options, and restricted stock] awarded to him in each year from 2014 through 2021. [The trial court added in its memorandum of decision issued in connection with the dissolution judgment that '[a]ll stock

options that have been awarded, granted or otherwise credited to the defendant prior to the dissolution of marriage shall be divided as part of the property settlement and shall not be alimony or child support.']

"In May, 2008, [less] than six months after the dissolution judgment was rendered, the plaintiff filed a motion for modification in which she requested, inter alia, that child support be raised from $439 per week to $1700 per week. On June 10, 2008, the court denied the motion without a hearing. From that [ruling], the plaintiff appealed to [the Appellate] [C]ourt, which heard argument on the matter on November 18, 2010. [See] *McKeon* v. *Lennon*, 131 Conn. App. 585, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). On appeal, [the Appellate] [C]ourt concluded that the trial court improperly [had] denied the plaintiff's motion without first conducting a hearing, and, therefore . . . reversed the judgment and remanded the matter to the trial court for further proceedings. Id., 599–600, [613–14]. . . .

"While the appeal of the 2008 motion for modification was pending before [the Appellate] [C]ourt, the plaintiff filed another motion for modification of child support with the trial court on April 22, 2010. The plaintiff's motion requested the court to increase the defendant's child support obligation in light of the plaintiff's increased expenses, her decreased net income, and the defendant's increased income since the dissolution judgment. On July 14, 2010, the defendant filed his own motion for modification of child support on the basis that one of their two minor children had turned eighteen years old and had graduated [from] high school. The court scheduled a hearing on both motions in May, 2011.

"On May 25, May 26, and June 1, 2011, the trial court held a contested hearing on the plaintiff's and the defendant's motions for modification. On October 20, 2011, the court . . . [granted] the defendant's 2010 motion for modification and den[ied] the plaintiff's 2010 motion for modification. The court ordered the defendant's child support obligation to be reduced from $439 per week to $400 per week. This modification reflected the change from support for two minor children, to support for only one minor child. From [these rulings], the plaintiff appealed . . . .

"On April 25, 2012, pursuant to [the Appellate] [C]ourt's remand, the trial court held a contested hearing on the plaintiff's 2008 motion for modification. Prior to the hearing, the plaintiff had also filed a motion for attorney's fees and a motion for contempt. At the hearing, the parties presented evidence on all three motions. As a result of the complicated procedural history of this case, the court was required to determine whether it could consider all changes in circumstances since the 2007 dissolution judgment, or whether it was limited to looking back to only 2011, when the court

ruled on the 2010 motions for modification.

"In November, 2012, the court issued its memorandum of decision, denying the plaintiff's motion for modification of child support, motion for attorney's fees, and motion for contempt. In doing so, the court considered the circumstances of the parties going back to the 2007 dissolution judgment [through April 25, 2012]. Further, the court found that the 2011 child support modification order was in accordance with the child support guidelines and remained equitable and appropriate given the circumstances of the case. From these [rulings], the plaintiff also appealed . . . ." (Footnote omitted.) *McKeon* v. *Lennon*, supra, 155 Conn. App. 425–29.

On appeal to the Appellate Court, the plaintiff claimed, inter alia, that the trial court improperly had granted the defendant's motion for modification of child support, denied her motions for modification of child support, modified the defendant's child support obligation by decreasing his weekly obligation and denied her motions for contempt and for attorney's fees. Id., 425. The Appellate Court disagreed and affirmed the trial court's rulings on all issues. Id., 425, 451. With respect to the plaintiff's motions for an upward modification of the defendant's child support obligation, the Appellate Court concluded that "both alimony and child support orders are subject to the same modification requirements under § 46b-86 (a)," and that, "under *Dan*, the plaintiff must show additional circumstances, beyond the defendant's increased income, to establish a substantial change in circumstances justifying a modification of child support." Id., 434. After considering the increase in the defendant's income, the Appellate Court further concluded that the trial court had not abused its discretion in denying the plaintiff's motions. Id. This certified appeal, relating only to the Appellate Court's determination regarding the trial court's rulings on the plaintiff's motions for modification of the defendant's child support obligation, followed.[1]

I

The plaintiff first claims that the Appellate Court incorrectly concluded that alimony and child support orders are subject to the same modification requirements, and, therefore, the court improperly applied the reasoning in *Dan* concerning alimony orders in affirming the trial court's denial of her motions for modification of child support. She claims that, by extending this court's holding in *Dan* to child support orders, the Appellate Court has profoundly altered Connecticut law in a manner that will have a negative impact on thousands of Connecticut families. The defendant agrees with the plaintiff that the Appellate Court improperly relied on *Dan* in affirming the trial court's denial of her motions but characterizes that reliance as dictum. He also points out that the trial court never

concluded that alimony and child support orders are subject to the same modification requirements when determining that the plaintiff had failed to establish a substantial change in circumstances at the hearing on her motions. We conclude that the reasoning in *Dan* regarding alimony orders does not apply to child support orders.

It is well established that interpretation of the statutory scheme governing child support orders in domestic relations cases constitutes a question of law. See, e.g., *Maturo* v. *Maturo*, 296 Conn. 80, 88, 995 A.2d 1 (2010); *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998). Accordingly, whether the Appellate Court properly interpreted the statutory scheme in the present case is subject to our plenary review. See, e.g., *Maturo* v. *Maturo*, supra, 88.

We begin with § 46b-86 (a), which addresses the modification of alimony and child support orders.[2] The statute provides in relevant part: "[A]ny final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." General Statutes § 46b-86 (a). In *Dan*, we concluded that "an increase in the supporting spouse's income, standing alone, ordinarily will not justify the granting of a motion to modify an alimony award . . . [because] [t]here is little, if any, legal or logical support . . . for the proposition that a legitimate purpose of alimony is to allow the supported spouse's standard of living to match the supporting spouse's standard of living after the divorce, when the supported spouse is no longer contributing to the supporting spouse's income earning efforts. Rather, the weight of authority is to the contrary. We are persuaded by the reasoning of these cases, namely, that, *when the amount of the original alimony award was and continues to be sufficient to fulfill the purpose of the award, whether that purpose was to maintain permanently the standard of living of the supported spouse at the level that he or she enjoyed during the marriage or to provide temporary support in order to allow the supported spouse to become self-sufficient, an increase in the income of the supporting spouse, standing alone, is not a sufficient justification to modify an alimony award.* In short, when the sole change in circumstances is an increase in the income of the supporting spouse, and *when the initial award was and continues to be sufficient to fulfill the intended purpose of that award,* we can conceive of no reason why the supported spouse, whose marriage to the supporting spouse has ended and who no longer contributes anything to the supporting spouse's income earning efforts, should be entitled to share in an improved standard of living that is solely the result of the supporting spouse's efforts." (Citations omitted; emphasis altered; footnotes omitted.) *Dan* v. *Dan*,

supra, 315 Conn. 10–15.

In contrast, child support orders are calculated under the Connecticut child support guidelines and are based on the income shares model;[3] Child Support and Arrearage Guidelines (August 1, 2005) preamble, p. ii; which has a different purpose. The income shares model considers the income of both parents and "presumes that the child should receive the same proportion of parental income as he or she would have received if the parents lived together." Id.; accord *Maturo* v. *Maturo*, supra, 296 Conn. 93. Accordingly, "the determination of a parent's child support obligation must account for all of the income that would have been available to support the children had the family remained together." *Jenkins* v. *Jenkins*, 243 Conn. 584, 594, 704 A.2d 231 (1998); see also *Dowling* v. *Szymczak*, 309 Conn. 390, 408, 72 A.3d 1 (2013) ("the calculation of child support is based on the income shares model and the parties' combined net income rather than on the actual costs associated with raising a child"). This means that, unlike when considering a request for the modification of an alimony order, the trial court may consider a substantial increase in the supporting spouse's income, standing alone, as sufficient justification for granting a motion to modify a child support order to ensure that the child receives the same proportion of parental income that he or she would have received if the parents had remained together.[4]

We therefore conclude,[5] in light of the different purposes of alimony and child support, that the Appellate Court improperly relied on *Dan* in determining that "both alimony and child support orders are subject to the same modification requirements under § 46b-86 (a)"; *McKeon* v. *Lennon*, supra, 155 Conn. App. 434; and that the court improperly concluded that the plaintiff was required to show additional circumstances, beyond the increase in the defendant's income, to justify modification of the child support award.[6] See id., 434–36.

## II

The plaintiff next claims that the Appellate Court improperly upheld the trial court's denial of her motions for modification because the trial court did not consider the defendant's exercised stock options, restricted stock or employment perquisites for the years in question when calculating his gross annual income.[7] The plaintiff thus argues that the conclusions of the trial court and the Appellate Court that the plaintiff failed to establish a substantial change in the defendant's financial circumstances were not based on a correct understanding of the components of his income. The defendant responds that the trial court acted within its discretion in concluding that the plaintiff had failed to establish a substantial change in his financial circumstances and that, even if the trial court had considered

income from the defendant's stock benefits and employment perquisites, a review of the guidelines worksheet entered into evidence by the plaintiff herself demonstrates that the court would not have found a change in his circumstances sufficient to justify an increase in his child support obligation. The defendant also argues that the plaintiff has ignored the fact that he pays one half of their youngest son's private secondary education expenses as child support. We agree in part with each of the parties.

The following additional facts are relevant to our resolution of this claim. On January 18, 2008, less than three weeks after the judgment of dissolution was entered, the plaintiff filed a motion for reconsideration and/or reargument, in which she raised numerous issues pertaining to division of the parties' pension plans, the children's medical coverage, life insurance, child support, asset valuation, account transfers and taxes. With respect to child support, the plaintiff's only claim relating to the trial court's calculation of the defendant's gross income was that the court had not included the monetary value of the defendant's employment perquisites and his in-kind compensation. Neither party appealed from the trial court's denial of this motion.

Thereafter, in May, 2008, and April, 2010, the plaintiff filed motions for modification of the child support order. In its memorandum of decision on the plaintiff's 2010 motion, which was the first motion decided, the trial court found that the defendant's base salary in 2011 was $260,000 and that his annual bonus was $175,000. The court also found that, although the defendant had exercised stock options in the amount of $190,361 after the judgment of dissolution was rendered, the options were subject to the dissolution court's property distribution order that stock options and restricted stock awards granted to the defendant prior to the dissolution judgment be divided as property and not be considered as alimony or child support. The court thus concluded that any income the defendant received from the exercised stock options could not be counted because doing so would result in "double-dipping." (Internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 97 n.9. The court further found that the defendant's annual bonus of $175,000 had been considered by the court and divided between the parties at the time of the dissolution judgment, and, therefore, it also could not be considered a second time in determining whether there had been a change in the defendant's circumstances. The court finally found, with respect to $59,484 in employment perquisites the defendant received in 2011, that the plaintiff's failure to identify how much, if any, of that amount constituted basic maintenance or special needs, which are considered a component of gross income as in-kind compensation under the governing regulations; see Regs., Conn.

State Agencies § 46b-215a-1 (11) (A) (vi); prevented the court from including any of this amount in its calculation of the defendant's gross income. The court thus concluded that, because the defendant's base salary had increased only $35,000, from $225,000 on the date of the dissolution judgment to $260,000 in 2011, there had been no substantial increase in his income under the child support guidelines.

The court conducted a similar analysis approximately one year later in its memorandum of decision on the plaintiff's 2008 motion for modification. The court found that the defendant's base salary as of April 25, 2012, was $270,000 and that he had received a bonus in 2012 of $185,000. The court again noted the provision in the dissolution judgment order that stock options and restricted stock awards granted to the defendant prior to the dissolution judgment were to be divided as part of the property settlement and not considered as alimony or child support. The court thus concluded that, although the defendant continued to receive and exercise stock options as part of his executive compensation, his past and future options were subject to the court's property distribution order and could not be counted as income, as doing so would result in double-dipping. The court added that it could not consider the $55,807 in employment perquisites the defendant received in 2012 because the plaintiff had failed to identify which items satisfied the definition of eligible perquisites in the statutory regulations. Although the court did not state, as it did in its memorandum of decision on the 2010 motion for modification, that it would not count the defendant's bonus because the bonus had been considered and divided at the time of the dissolution judgment, it ultimately concluded that the plaintiff had failed to show a substantial change in the defendant's circumstances from the date of the dissolution judgment to the present.

The plaintiff appealed from the trial court's rulings on her motions for modification to the Appellate Court, which consolidated the appeals for review.[8] See *McKeon* v. *Lennon*, supra, 155 Conn. App. 427 and n.1. The Appellate Court affirmed the rulings with little analysis. The court briefly referred to the trial court's findings regarding the increase in the defendant's base salary and bonus in its decision on the plaintiff's 2010 motion. See id., 433–34. It then concluded that the plaintiff had not established that there had been a substantial change in the defendant's circumstances because, under *Dan*, the plaintiff was required to show additional circumstances beyond the defendant's increased income to justify an upward modification of his child support obligation.[9] See id., 434. With respect to the plaintiff's 2008 motion, the Appellate Court also concluded, after an equally perfunctory reference to the trial court's findings on the defendant's base salary and bonuses during the years following the dissolution judg-

ment, that the plaintiff had not established a substantial change in the defendant's circumstances. Id., 435–36. The Appellate Court did not address the trial court's findings regarding the defendant's employment perquisites in its discussion of the plaintiff's motions. See generally id., 434–36.

The Appellate Court subsequently considered the trial court's exclusion of the defendant's exercised stock options and restricted stock from its income calculations when ruling on the defendant's motion for a downward modification of his child support obligation. Id., 438. The court noted that the trial court's exclusion of the stock benefits was based on its finding that the benefits previously had been considered and divided as part of the property settlement. See id., 438–40. In response to the plaintiff's argument that income from the stock options and restricted stock constituted deferred compensation, the Appellate Court stated that it was the plaintiff's burden to distinguish between stock awarded before and after the dissolution, and that the plaintiff had failed to present evidence that the stock options the defendant had exercised during the period in question were awarded after the dissolution. See id., 439–40. With respect to the restricted stock, the court explained that, in addition to the fact that there was evidence indicating that the stock at issue was part of the property distribution, the defendant's testimony regarding when the stock vested indicated that it had not vested at the time of the plaintiff's motions. See id. The Appellate Court thus concluded that the trial court properly had excluded the exercised stock options and restricted stock from the defendant's gross income. Id., 440. The Appellate Court also concluded, with respect to the defendant's employment perquisites, that there was "nothing in the record to undermine . . . confidence in the court's factual findings, and [it thus] defer[red] to [the trial court's] sound judgment in reaching its conclusions." Id., 443.

We begin with the standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . [T]he foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply, however, is a question of law over which

this court should exercise plenary review." (Citations omitted; internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

A

We turn first to the question of whether the Appellate Court properly upheld the trial court's decision to exclude the defendant's exercised stock options and restricted stock from its calculation of his gross income for the years in question. General Statutes § 46b-84 (a) provides in relevant part: "Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. . . ." The statute further provides: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." General Statutes § 46b-84 (d).

In addition to these provisions regarding the obligation of parents to provide child support, the legislature has established a commission to issue child support guidelines "to ensure the appropriateness of criteria for the establishment of child support awards . . . . Such guidelines shall ensure . . . that current support . . . shall be based on the income of both parents and the obligor's ability to pay." General Statutes § 46b-215a (a). As previously discussed, the guidelines "are predicated upon the concept that children should receive the same proportion of parental income that they would have received had the family remained intact. Child Support and Arrearage Guidelines, [supra, preamble, p. ii]. Toward that end, the guidelines are income driven, rather than expense driven. At each income level, the guidelines allocate a certain percentage of parental income to child support. The percentage allocations contained in the guidelines aim to reflect the average proportions of income spent on children in households of various income and family sizes, and contain a built-in self-support reserve for the obligor. [See id., p. iii]. The result is that the guidelines incorporate an allocation of resources between parents and children that the legislature has decided is the appropriate allocation. Consequently, our interpretation of the guidelines must seek to preserve this allocation." *Unkelbach* v. *McNary*, supra, 244 Conn. 357–58. In order to achieve this goal, however, "the determination of a parent's child support obligation must account for *all* of the income that would

have been available to support the children had the family remained together." (Emphasis added.) *Jenkins* v. *Jenkins*, supra, 243 Conn. 594. "[T]he party seeking the modification bears the burden of demonstrating that such a change has occurred." (Internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 672, 81 A.3d 215 (2013).

Section 46b-215a-1 (11) of the Regulations of Connecticut State Agencies defines "gross income" as "the average weekly earned and unearned income from all sources before deductions, including but not limited to the items listed in subparagraph (A) of this subdivision, but excluding the items listed in subparagraph (B) of this subdivision." Subparagraph (A) lists twenty-two sources of income,[10] one of which is "profit sharing, [and] deferred and incentive-based compensation . . . ." Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (iv). Subparagraph (B) lists six sources of excluded income,[11] none of which is relevant in the present case. In considering these income inclusions and exclusions, the preamble to the child support guidelines instructs that "gross income includes all kinds of earned and unearned income not specifically excluded" and that the "list of inclusions is illustrative and not exhaustive." Child Support and Arrearage Guidelines, supra, preamble, p. ix.

Applying these guidelines, we conclude that exercised stock options and restricted stock that has vested[12] ordinarily should be considered components of a party's gross income for purposes of calculating child support because they constitute "deferred or incentive-based compensation"; Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (iv); and are not specifically excluded under the guidelines. The fact that the applicable guidelines in 2005 did not define deferred or incentive-based compensation as including such benefits is irrelevant. Stock options always have been understood as a form of incentive-based compensation. See, e.g., Black's Law Dictionary (6th Ed. 1990) (stock option is "often granted to management and key employees as a form of incentive compensation"). Moreover, "[w]e have previously interpreted broadly the definition of gross income contained in the guidelines to include items that, in effect, increase the amount of a parent's income that is available for child support purposes."[13] *Unkelbach* v. *McNary*, supra, 244 Conn. 360, citing *Jenkins* v. *Jenkins*, supra, 243 Conn. 591–95.

In the present case, the trial court explained in its memorandum of decision on the plaintiff's 2010 motion for modification that it did not include $190,361 from the defendant's exercised stock options as a component of his income because the options were subject to the dissolution court's property distribution order that stock options and restricted stock awards granted to the defendant prior to the dissolution judgment be

divided as property and not be considered as alimony or child support. Neither party took issue with this provision of the dissolution order when the plaintiff filed her motion for reconsideration and/or reargument, and neither party appealed from the dissolution judgment on that ground. Accordingly, given the parties' acceptance of this provision, the Appellate Court correctly determined that the trial court had not abused its discretion in excluding the exercised stock options and restricted stock from the defendant's gross income on the ground that they were part of the original property distribution order.

The trial court's reasoning when deciding the plaintiff's 2008 motion, in which the court considered the defendant's income from the date of the dissolution judgment through April 25, 2012, was more ambiguous. Although the court again referred to the fact that the dissolution order provided that stock benefits awarded to the defendant prior to the dissolution judgment were to be divided as part of the property settlement and not considered as alimony or child support, the court did not state how much income the defendant had received from the exercised stock options or the restricted stock and did not make a finding as to whether this income was derived from stock benefits awarded prior to or following the dissolution judgment. The court merely stated that the defendant had continued to receive and exercise stock options as part of his executive compensation and that, because his past and *future* stock options were subject to the court's property distribution order, the funds received from their exercise could not be counted as income. For the reasons previously discussed, we disagree with the trial court that the defendant's income from the exercised stock options and restricted stock awarded as compensation following the dissolution judgment is barred from inclusion in the defendant's gross income by the dissolution order. Thus, to the extent the defendant received income from those sources, such income should have been counted as part of his gross income for the years in question. For example, the record indicates that, in the year 2012, the defendant received more than $53,000 from the vesting on January 3, 2012, of restricted stock that he was awarded on March 5, 2008, following the dissolution judgment. There may be additional evidence in the record that the defendant received income from other exercised stock options or restricted stock that vested following the dissolution judgment and thus was not part of the property distribution. Accordingly, in light of this ambiguity in the trial court's decision, we conclude that the Appellate Court incorrectly determined that the trial court, in its ruling on the plaintiff's 2008 motion for modification, had not abused its discretion in excluding the income derived from these sources when calculating the defendant's gross income.[14] Rather, the case must be remanded to the trial court

for the purpose of reconsidering the plaintiff's 2008 motion for an upward modification of the defendant's child support obligation in light of our conclusion that *Dan* does not apply and that additional findings must be made as to whether any of the exercised stock options and restricted stock that vested during the time in question were awarded following the dissolution judgment, and, if so, the value of those benefits.

B

We next consider the trial court's decision to omit the defendant's alleged employment perquisites from its calculation of the defendant's gross income when deciding the plaintiff's motions for modification. Section 46b-215a-1 (11) (A) (vi) of the Regulations of Connecticut State Agencies includes in its definition of gross income "employment perquisites and in-kind compensation (any basic maintenance or special need such as food, shelter or transportation provided on a recurrent basis in lieu of or in addition to salary or wages) . . . ."

The record indicates that the defendant received $59,484 in employment perquisites in 2011 and $55,807 in 2012, which, according to the plaintiff's exhibits, consisted almost entirely of employer contributions to the defendant's retirement and health insurance plans.[15] The child support guidelines, however, provide that such contributions are to be deducted from a parent's gross income in order to determine the net income available for child support. See Regs., Conn. State Agencies § 46b-215a-2b (c) (2) (C) and (F) (repealed July 1, 2015) (providing for deductions from parent's gross income of employer contributions to mandatory retirement plans and to medical, hospital, dental or health insurance premium payments for parent and parent's legal dependents).

In the present case, the trial court excluded the employment perquisites from its calculations of the defendant's gross income when ruling on both motions because it concluded that the plaintiff had failed to meet her burden of identifying how much, if any, of the perquisites constituted food, shelter, transportation or other basic needs pursuant to § 46b-215a-1 (11) (A) (vi) of the Regulations of Connecticut State Agencies. Although this factual finding and the trial court's ultimate decision to exclude the employment perquisites were correct, we also note that most of the perquisites would have been deducted in any event under § 46b-215a-2b (c) (2) (C) and (F) when calculating the parties' net income. We thus conclude that the Appellate Court properly determined that the trial court did not abuse its discretion in excluding the employment perquisites from its calculation of the defendant's gross income in its rulings on the plaintiff's motions for modification.[16]

The judgment of the Appellate Court is reversed with

respect to its determination that alimony and child support orders are subject to the same modification requirements, and its determination that the trial court, in ruling on the plaintiff's 2008 motion for modification of child support, did not abuse its discretion in excluding income derived from stock options awarded and exercised and restricted stock awarded and vesting following the dissolution judgment in its calculation of the defendant's gross income, and the case is remanded to the Appellate Court with direction to remand the case to the trial court to make findings as to whether any of the exercised stock options and restricted stock that vested postdissolution were awarded as compensation following the dissolution judgment, and, if so, how much income was derived from those sources, and to reconsider the plaintiff's 2008 motion for modification in light of those findings and in accordance with our determination that child support orders are not subject to the same modification requirements as alimony orders; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

[1] This court granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine, based upon this court's decision in *Dan* v. *Dan*, [supra, 315 Conn. 1], that the trial court correctly determined that the plaintiff had not established a substantial change in circumstances in regard to her 2008 and 2010 motions for modification [of child support]?" *McKeon* v. *Lennon*, 317 Conn. 901, 114 A.3d 166 (2015).

[2] Although alimony and child support orders are calculated on the basis of several overlapping factors, the court also considers several additional factors specific to spouses and children, respectively, in calculating such orders. For example, under General Statutes § 46b-82 (a), the court determines whether alimony should be awarded, and the amount and duration of the award, after considering the length of the marriage, the causes for its termination, "the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." In comparison, the court calculates child support pursuant to the child support guidelines and the factors set forth in General Statutes § 46b-84 (d), which include "the respective abilities of the parents to provide such maintenance and the amount thereof," and "the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

[3] "The guidelines are accompanied by a preamble that is not part of the regulations but is intended to assist in their interpretation." *Maturo* v. *Maturo*, supra, 296 Conn. 92–93.

[4] General Statutes § 46b-86 (a) clarifies that "[t]here shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial." Accordingly, an increase or decrease in the supporting party's income that satisfies this standard presumably would justify a request for modification of child support. The statute nonetheless provides that the court shall continue to consider other factors when evaluating such a request: "In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. After the date of judgment, modification of any child support order issued before, on or after July 1, 1990,

may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution." General Statutes § 46b-86 (a).

[5] We note that all of the amici curiae agree with our conclusion.

[6] The Appellate Court initially observed that the plaintiff's earning capacity had remained the same, the plaintiff had failed to establish a significant increase in her expenses and, even though the defendant's base salary and bonuses had increased since the dissolution judgment, the increase was not substantial. *McKeon* v. *Lennon*, supra, 155 Conn. App. 432–34. The court then cited *Dan* in concluding that the plaintiff must show additional circumstances, beyond the defendant's increased income, to establish the "substantial change in circumstances" required to justify modification of the child support order. Id., 434.

[7] We address this issue because we view it as implicated in the certified question of whether the Appellate Court properly relied on the reasoning in *Dan* when concluding that the plaintiff had not established a substantial change in circumstances sufficient to support her 2008 and 2010 motions for modification of child support, and both parties have briefed the issue extensively. See footnote 1 of this opinion. In contrast, we do not consider the effect of the trial court's exclusion of the defendant's bonus from its calculation of his gross income because that issue was not directly briefed by the parties, although the plaintiff refers to the bonus as contributing to the increase in the defendant's income following the dissolution.

[8] As the Appellate Court noted, these appeals were consolidated with several other appeals by the plaintiff from various rulings by the trial court. See *McKeon* v. *Lennon*, supra, 155 Conn. App. 427 n.1.

[9] Despite this assertion, the Appellate Court appeared to agree with the trial court's analysis, which was conducted prior to the issuance of this court's decision in *Dan*, and concluded that there had not been a substantial increase in the defendant's income under the guidelines. See *McKeon* v. *Lennon*, supra, 155 Conn. App. 434.

[10] These are: "(i) salary; (ii) hourly wages for regular, overtime and additional employment not to exceed 45 total paid hours per week; (iii) commissions, bonuses and tips; (iv) profit sharing, deferred and incentive-based compensation and severance pay; (v) tribal stipends and incentives; (vi) employment perquisites and in-kind compensation (any basic maintenance or special need such as food, shelter or transportation provided on a recurrent basis in lieu of or in addition to salary or wages); (vii) military personnel fringe benefit payments; (viii) benefits received in place of earned income including, but not limited to, workers' compensation benefits, unemployment insurance benefits, strike pay and disability insurance benefits; (ix) veterans' benefits; (x) Social Security benefits paid to the parent for the parent's own needs, provided when the parent whose income is being determined receives both Supplemental Security Income (SSI) and Social Security disability or retirement benefits, the Social Security income inclusion shall not exceed $5 per week; (xi) Social Security dependency benefits paid on behalf of a child whose support is being determined, which are based on the earnings record of the parent whose income is being determined; (xii) net proceeds from contractual agreements; (xiii) pension and retirement income; (xiv) rental income after deduction of reasonable and necessary expenses; (xv) estate or trust income; (xvi) royalties; (xvii) interest, dividends and annuities; (xviii) self-employment earnings, after deduction of all reasonable and necessary business expenses; (xix) alimony being paid by an individual who is not a party to the support determination; (xx) adoption subsidy benefits received by the custodial parent for the child whose support is being determined; (xxi) lottery and gambling winnings, prizes and regularly recurring gifts (except as provided in subparagraph [B] [vi] of this subdivision); and (xxii) education grants (including fellowships or subsidies, to the extent taxable as income under the Internal Revenue Code)." Regs., Conn. State Agencies § 46b-215a-1 (11) (A).

[11] These are: "(i) support received on behalf of a child who is living in the home of the parent whose income is being determined; (ii) Supplemental Security Income (SSI) payments, including those received on behalf of a child who is living in the home of the parent whose income is being determined; (iii) Social Security disability or Social Security retirement benefits in excess of $5 per week, when the parent also receives SSI; (iv) federal, state and local public assistance grants; (v) earned income tax credit; and (vi) the income and regularly recurring contributions or gifts of a spouse or domestic partner." Regs., Conn. State Agencies § 46b-215a-1 (11) (B).

[12] Restricted stock is considered income in the year that it vests rather

than the year in which it is exercised. See *Maturo* v. *Maturo*, supra, 296 Conn. 97–98 n.9.

[13] To the extent any ambiguity remains, the amended 2015 child support guidelines have settled the point by clarifying that incentive-based income includes "stock options, restricted stock, restricted stock units, phantom stock, stock appreciation rights and other forms of delayed or deferred compensation." Child Support and Arrearage Guidelines (July 1, 2015) preamble, p. xvi.

[14] In light of the parties' acceptance of the provision in the present dissolution decree that the defendant's stock options and restricted stock "shall be divided as part of the property settlement and *shall not be alimony or child support*"; (emphasis added); we reject as irrelevant the plaintiff's arguments that (1) the Appellate Court misapplied our case law on the trial court's loss of jurisdiction over property distributed in accordance with a dissolution decree, (2) the trial court erroneously determined that to include income from stock options and restricted stock awarded prior to the dissolution judgment would be double-dipping, and (3) the plaintiff was deprived of the fairness and consistency required by the child support guidelines because the erroneous calculation of the defendant's income resulted in a child support order based on an incorrect presumptive range. If the plaintiff did not agree with one or more provisions in the dissolution decree, she should have sought to preclude them from the decree or filed an appeal from the dissolution judgment on that ground. Additionally, to the extent the plaintiff relies on *Maturo* for the proposition that income from stock options and restricted stock distributed as property should be included in the defendant's gross income, that reliance was improper because the court in *Maturo* did not directly discuss that issue, and there is no indication in *Maturo* whether the dissolution decree in that case included a provision similar to the provision at issue in the present case, which provided that the stock benefits were part of the property settlement and not to be considered as alimony or child support. See *Maturo* v. *Maturo*, supra, 296 Conn. 97–98 n.9.

[15] For example, the record indicates that, in 2012, the defendant received $55,807 in employment perquisites consisting of $39,344 in contributions to his retirement plans and $16,463 in contributions to his health and other insurance premiums. Of that $16,463, $2219 was allocated to various life, accident and disability insurance premiums.

[16] Because they are outside the scope of the certified question, we do not address the defendant's arguments that his child support obligation includes payment of one half of his youngest child's secondary private school expenses or that the plaintiff's income worksheet indicates that, even if the trial court had considered the stock benefits, his support obligation would have remained within the proper range.

———————————————————