******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FLYNN, J., dissenting. Those who have sat in the busy trial courts engaged in the challenging business of what Whittier once described as the "doubtful balance of rights and wrongs," know that some cases merit a second look on appeal. In my view, this case requires such a second look. In late 2005, the defendants Marlene E. Owen and William S. Owen executed two mortgages on their 22 Bayberry Hill Road property, including the mortgage that is the subject of this foreclosure action, in favor of Mortgage Electronic Registration Systems, Inc., as nominee for WMC Mortgage Corporation (WMC).[1] The subject mortgage later was assigned to the plaintiff, Wells Fargo Bank, N.A., as Trustee for the Holders of the Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMCI, in September, 2012. After the mortgage payments proved unsustainable for the defendants, the plaintiff commenced this action and ultimately obtained a judgment of strict foreclosure on May 18, 2015. A few months later, after retaining a lawyer, the defendants moved to open the judgment of strict foreclosure pursuant to General Statutes § 49-15[2] in an attempt to save their home. In support of their motion, the defendants submitted a sworn affidavit—along with a federal tax return and their original mortgage loan application—averring that they were fraudulently induced into executing the two mortgages; see footnote 1 of this dissenting opinion; by an agent of the plaintiff's predecessor in interest, WMC. After hearing arguments, the trial court denied the defendants' motion to open on the papers. In my view, this was a mistake. The affidavit, together with the attachments, set forth more than mere unsupported allegations of fraud. Arguably, these submissions were sufficient to warrant opening the judgment. In any event, the defendants certainly satisfied their threshold burden of presenting more than unsubstantiated speculation. Therefore, the court reasonably should have set the motion down for an evidentiary hearing. Accordingly, I would reverse the court's judgment and remand the case for further proceedings.

I acknowledge that where, as in the present case, "a party seeks to open and vacate a judgment based on new evidence allegedly showing the judgment is tainted by fraud, he must show, inter alia, that he was diligent during trial in trying to discover and expose the fraud, and that there is clear proof of that fraud."[3] (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 107, 952 A.2d 1 (2008). Our case law recognizes, however, that parties seeking to open a judgment on the basis of fraud need only make a threshold showing substantiating their claim beyond mere speculation or suspicion; upon making that showing, they become entitled to an evidentiary hearing to

determine whether clear proof of the fraud exists. In *Tyler E. Lyman, Inc.* v. *Lodrini*, 78 Conn. App. 684, 690, 828 A.2d 681, cert. denied, 266 Conn. 917, 833 A.2d 468 (2003), this court held that "[b]ecause the [trial] court's exercise of discretion in ruling on the motion to open [the judgment] was dependent on the disputed factual issue of fraud, due process required that the [trial] court hold an evidentiary hearing on that issue. . . . The [trial] court, therefore, abused its discretion in ruling on the matter without affording the parties the opportunity to present evidence with regard to the defendant's fraud claim." (Citation omitted.) In *Chapman Lumber, Inc.* v. *Tager*, supra, 69, our Supreme Court rejected the defendant's claim that the trial court abused its discretion by denying his motion to open without first conducting an evidentiary hearing because it was "obvious . . . that the defendant had no evidence in support of his allegations [of fraud], but rather, sought to go on a fishing expedition in the hope of discovering some." Id., 108. Significantly, however, the court did not foreclose the proposition that a party could be entitled to a hearing under other circumstances, observing that "[t]*o be entitled to a hearing, the defendant needed to make some threshold showing that his claims had substance*, which he failed to do." (Emphasis added.) Id. Indeed, this court previously has approved a trial court's position that "[i]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 270, 540 A.2d 713 (1988).[4]

This rule entitling parties to an evidentiary hearing after making the requisite threshold showing makes good sense—requiring parties to demonstrate "clear proof" of the fraud based solely on affidavits and the paper record, without an evidentiary hearing, will in many cases be an insurmountable burden. This is because fraud claims inevitably involve "questions of motive, intent and subjective feelings and reactions"; (internal quotation marks omitted) *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 806, 842 A.2d 1134 (2004); and affidavits setting forth only one party's version of the facts can sometimes be deemed inadequate to prove such issues. See id. Our Supreme Court has observed that the "summary judgment procedure is particularly inappropriate" for resolving questions of fraudulent intent. *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 309, 407 A.2d 971 (1978). Rather, "[i]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." (Internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, supra, 806. In light of this practical reality,

in-court testimony is sometimes necessary to determine whether "clear proof" of the fraud exists.

Applying these principles, even if the court concluded that the affidavit and its supporting documents were not enough, standing alone, to warrant opening the judgment, I do not believe that the court reasonably could have concluded that the defendants had not met the threshold for entitlement to a further evidentiary hearing on their motion to open. In his sworn affidavit, William attested to the following facts concerning the making of the mortgages: (1) that before executing the two mortgages, he expressed concerns about his ability to afford them, particularly because they represented 100 percent financing on the property, required greater monthly payments than he was used to, and carried a substantial $45,457.89 balloon payment;[5] (2) that an agent of WMC convinced him to ignore such concerns by falsely claiming that similarly structured mortgages "were common and usual" and that, "based on the value of the property," he could "certainly" refinance the mortgages to avoid the balloon payment; (3) that he would not have agreed to the mortgage loans, given their "substantial initial costs and unaffordable burdens," but for these misrepresentations; and (4) that WMC falsely listed Marlene's monthly income as $5000 in the loan application when in fact it was only $2100. The defendants also submitted copies of their loan application and Marlene's 2004 tax returns, showing that she earned just over $2100 per month that year, and that her income was listed as $5000 on the application. The plaintiff never filed a counteraffidavit rebutting any of the defendants' assertions, nor did it offer any rebuttal testimony or documentary evidence. Arguments by the plaintiff's counsel in opposition are not sworn, and are not evidence.

The defendants' submissions raised a substantial question about whether the defendants were fraudulently induced into entering the two mortgages. Indeed, this court recently has held that knowingly false statements to a borrower about the affordability of a loan can form the basis for a claim of fraud in the inducement. See *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 382–83, 143 A.3d 638 (2016). That the defendants presented documentary evidence suggesting that Marlene's income was improperly inflated—by almost 140 percent—bolsters their claim that the ultimate judgment of strict foreclosure was tainted by fraud. I also do not agree with the majority's characterization of William's affidavit as mere "allegations" of fraud. Sworn statements of fact set forth in an affidavit, concerning matters about which the affiant has personal knowledge, are not mere allegations entitled to no weight; they are actual evidence of the truth of those facts. That our judicial system accords affidavits the weight of evidence in a variety of contexts bears that out. Indeed, the plaintiff in the present case proved the

underlying mortgage debt by submitting an affidavit of debt. In the marital dissolution context, this court held that a defendant's child support guidelines worksheet was sufficiently "based on underlying evidence," including, inter alia, a financial affidavit. *McKeon* v. *Lennon*, 155 Conn. App. 423, 444, 109 A.3d 986 (2015), rev'd in part on other grounds, 321 Conn. 323, 138 A.3d 242 (2016). Affidavits also suffice in prejudgment remedy proceedings to establish probable cause that the moving party will prevail on the merits. See General Statutes § 52-278c (a) (2).

Additionally, the transcript of the July 20, 2015 short calendar hearing, at which the defendants' motion was heard, does not reflect that the trial court applied any of the previously discussed principles.[6] Instead, although the precise basis for the court's decision is not entirely clear, the court expressed skepticism about the merits of the defendants' fraud claim because they had an opportunity to review the allegedly inflated income statement during the closing, and because they executed the mortgage to consolidate their credit card debt. There is no evidence in the record, however, to suggest that the defendants had an opportunity to review the loan application at the loan closing or that the proceeds from the mortgage being foreclosed satisfied their credit card debt. Indeed, William Owen explicitly disputed the proposition that the mortgage, in any manner, was related to their credit card debt. Thus, the stated basis for the court's decision only underscores the need for an evidentiary hearing if the court was not satisfied that the affidavit and attached documents established clear proof of the fraud.

In sum, this is not a case in which the defendants were "not able to substantiate [their] allegation of fraud beyond the realm of speculation and mere suspicion." *Bank of America, N.A.* v. *Thomas*, 151 Conn. App. 790, 805, 96 A.3d 624 (2014). Accordingly, if the court deemed it needed more than the unrebutted affidavit and attachments, an evidentiary hearing at which the plaintiff and the defendants would present relevant evidence was necessary for the court to reasonably and properly exercise its discretion in ruling on the defendants' motion to open. See *Tyler E. Lyman, Inc.* v. *Lodrini*, supra, 78 Conn. App. 690. A short calendar, like the calendar proceeding on the defendants' motion to open, is generally not the time or place to take extended witness testimony. The court nonetheless could have scheduled the case for a hearing at a later date.[7] The court's failure to do so despite the genuine and critically important issues raised by the defendants' motion to open and supporting evidence, in my judgment, was a mistake, and its denial of the defendants' motion an abuse of discretion.

Finally, I do not fault the defendants for their delay in identifying and raising their claim of fraud in the

inducement until after the judgment of foreclosure was rendered. The defendants, who generally were unsophisticated in financial transactions and thus in a poor position to recognize the factual basis for a claim of fraud, remained self-represented until April 13, 2015, by which point the plaintiff already had moved for the judgment of strict foreclosure. After the defendants obtained the benefit of counsel, it then took time for their lawyer to obtain and review the evidence and formulate their fraud claim. Indeed, the defendants obtained Marlene's 2004 tax returns from a decade before this foreclosure action was commenced to substantiate their claim before filing their motion.

Like claims of bias, claims of fraud are easily alleged. However, because the mere making of such claims against another carries a certain taint, they should not be made unless there is some substance to them. The defendants' counsel properly waited to make the claim of fraud until he had gathered and reviewed the evidence, including Marlene's tax returns, to make the required threshold showing that the claim had substance. Attorneys each take an oath swearing to "not knowingly maintain or assist in maintaining any cause of action that is false or unlawful . . . ." General Statutes § 1-25. Rule 3.1 of the Rules of Professional Conduct provides in relevant part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ." Maintaining fidelity to these principles can take time. Penalizing the defendants for taking the time to obtain evidentiary support for their claims before moving to open the judgment would serve no useful policy consideration embodied in the attorneys' oath or Rules of Professional Conduct.

Accordingly, I would reverse the court's judgment denying the motion to open and remand the case for further proceedings.

[1] William Owen's affidavit, which he filed in support of his motion to open the judgment of strict foreclosure, avers that he executed a mortgage in favor of WMC for $215,920—the mortgage at issue in this foreclosure action—and a second, back-to-back mortgage for $53,980. That the deal was structured in this manner appears to be undisputed.

[2] General Statutes § 49-15 provides in relevant part: "(a) (1) Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable, provided no such judgment shall be opened after the title has become absolute in any encumbrancer . . . ."

[3] As the majority correctly notes, the defendants brought this appeal more than twenty days after the entry of the judgment of strict foreclosure. Thus, our review is limited to whether the trial court abused its discretion in denying the motion to open; we cannot entertain issues relating to the *merits* of the underlying judgment. See *Wells Fargo Bank*, *N.A.* v. *Ruggiri*, 164 Conn. App. 479, 484, 137 A.3d 878 (2016).

[4] This court's decision in *Bank of America*, *N.A.* v. *Thomas*, 151 Conn. App. 790, 96 A.3d 624 (2014), is not to the contrary. In that case, the defendant moved to open the judgment of strict foreclosure asserting that newly discov-

ered evidence showed that the plaintiff obtained the judgment through fraud. Id., 804. Although this court began by stating that the defendant failed to present clear proof of the fraud at the initial hearing; id., 805; it later cited *Bruno* v. *Bruno*, 146 Conn. App. 214, 76 A.3d 725 (2013), for the proposition that the "the defendant was not able to substantiate her allegation of fraud beyond the realm of speculation and mere suspicion." *Bank of America*, *N.A.* v. *Thomas*, supra, 805. In *Bruno*, this court observed that "the trial court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery." (Citations omitted.) *Bruno* v. *Bruno*, supra, 231.

[5] The term "balloon payment" refers to an unamortized lump sum principal payment due at the end of the term of the loan according to the payment schedule set forth in the promissory note.

[6] The court denied the defendants' motion to open in an order dated July 20, 2015, without issuing a written decision. The court then granted the defendants' motion for articulation but, rather than issuing a written decision, attached a signed copy of the transcript from the short calendar hearing. The defendants filed a second motion for articulation, which the court denied.

[7] The law days were set to run the day after the defendants' motion to open was heard at the July 20, 2015 short calendar, but that was no impediment to the court's ability to schedule a hearing at a later date. Indeed, the court's denial of the defendants' motion to open without a hearing itself triggered an automatic stay of the running of the law days until the expiration of the twenty day period in which to appeal from that denial. See *Citigroup Global Markets Realty Corp.* v. *Christiansen*, 163 Conn. App. 635, 639–40, 137 A.3d 76 (2016); *Brooklyn Savings Bank* v. *Frimberger*, 29 Conn. App. 628, 630–32, 617 A.2d 462 (1992). It follows that, if the court opened the judgment for the limited purpose of holding an evidentiary hearing on the motion, then the court could reset the law days to accommodate that hearing.